BOYNTON *vs.* PAGE.

The prohibition in our statute, relative to the observance of *Sunday*, against *exposing to sale* on that day any goods, chattels, &c. extends only to the *public exposure of commodities to sale* in the streets or stores, shops, ware-houses or market places, and has no reference to *mere private contracts*, made without violating, or tending to produce a violation of the public order and solemnity of the day ; *and it was accordingly held*, that a transfer of personal property, made on *Sunday*, was valid, and the title to the property passed.

Where two persons are partners in the carrying on of a trade, and by the terms of their partnership one finds stock and the other does the work, and each is entitled to a proportion of the proceeds of the manufactured, articles, and the working partner absconds, the other, *it seems*, is entitled to take possession of the whole stock on hand, holding the share of his partner subject to the claims of his creditors ; but if the absconding partner relinquishes his interest to the other partner, an actual delivery is not necessary to complete the transfer.

The partner finding stock may maintain *replevin* for it in his own name, if it be taken from the possession of the working partner before he has begun to work it up—especially where property in the partner is not pleaded by the defendant.

Where, besides the plea of *non cepit*, in an action of *replevin*, the defendant *pleads property* in a third person and prays a return, the jury must pass upon all the issues ; and where, in such case, it appeared from the *record* brought up by a writ of error, that the jury had passed only upon the plea of *non cepit*, finding a verdict for the plaintiff and had omitted to pass upon the plea of *property*, the judgment below was reversed, although, from the bill of exceptions attached to the record, it appeared that *all the issues* were found for the plaintiff.

ERROR from the St. Lawrence common pleas. Page sued Boynton in an action of replevin, for the taking of a quantity of saddlery and saddlery stock. Boynton pleaded *non cepit*, and averred the taking of the property as a constable, by virtue of an attachment sued out by a creditor of one *Orin Strong*, alleging the property taken to be the property of Strong. He also put in a plea of property in Strong, and in the creditor who had sued out the attachment. Issues were taken upon the several avowries and pleas. On the trial the following facts appeared : *Page*, the plaintiff in this suit, and *Strong*, the debtor against whose goods and chattels the at-

tachment issued, were *partners* in the business of saddle and
harness making, which was carried on in the town of Canton,
in St. Lawrence county. Page furnished the stock, Strong
did the work. The proceeds were divided as follows : *two-
thirds* of the proceeds of the new work went to Page, and the
remaining third to Strong, and the proceeds arising from re-
pairs of old work were equally divided between them ; all
stock remaining on hand at the end of the year to belong to
Page. Upon these terms the business was carried on from
1st April, 1827, until 6th January, 1831, when Strong sur-
rendered up the stock on hand to A. Clark, jun., who, with
the assent of Page, took Strong's place in the contract, and
commenced work accordingly. In the arrangement thus
made, it was stipulated that Strong should complete such
work as was on hands unfinished, among which were some
saddles, and a set of harness making for his own use. Strong
continued in the shop about his own work, and occasionally
selling work on hand, until a certain *Saturday* in February,
1831, when he absconded and went to Brockville, in Canada.
Page pursued and found him at Brockville, on the next day,
which was *Sunday*, and an arrangment then took place be-
tween them in reference to their affairs. Page insisted that
Strong was indebted to him. Strong delivered up to Page
notes to the amount of $43, agreed that Page might take all
the saddler's work in the shop at Canton, and promised in the
spring to come to Canton and settle with him, if a balance
should still remain due to him. There was no note in wri-
ting made of the bargain ; no inventory made of the saddler's
work to be taken by Page, nor any value affixed to it. On
*Monday morning* (about one o'clock A. M.) Boynton, by vir-
tue of the attachment stated in his avowry, *seized* upon the
saddler's work and some stock in the shop at Canton ; the
saddler's work being worth about $100, and the stock about
$20 ; for which seizure the action was brought. After the
plaintiff had closed his testimony and rested his cause, the
counsel for the defendant insisted that he was not entitled to
recover, because the transfer made at Brockville was *void*, be-
ing made on *Sunday* ; and was not a valid agreement within
the statute of frauds : that the defendant having levied upon

the goods by virtue of the attachment previous to the plaintiff's obtaining possession under the contract made in Canada, he (the defendant) had the better right ; that *Clark* (the successor of Strong, and who had proved the agreement between Page and Strong, as to the terms of the partnership) was an interested witness ; and that Clark only, and not Page, could maintain an action for the *stock* which had been levied on. Upon these grounds the defendant's counsel asked for a nonsuit, which was refused by the court. The court charged the jury that the plaintiff was not entitled to recover if they should find that the transfer of the goods at Brockville was *an absolute transfer*, because the delivery was not perfect previous to the seizure of the goods under the attachment ; but if they should find that the property was placed in his hands by Strong simply as a trustee, to pay himself out of the proceeds of the property and to account to Strong at some future day, then the plaintiff would be entitled to recover. They further instructed the jury that the transfer at Brockville was valid though made on *Sunday ;* that it was not within the statute of frauds, and that the plaintiff was entitled to recover for the unwrought stock, Clark not having an exclusive right of possession. The jury found for the plaintiff. In the *bill of exceptions*, tendered by the defendant, it is stated that the jury found for the plaintiff *upon all the issues ;* but in the *record* the finding of the jury *only upon the plea of non cepit* is stated, and judgment is entered for the six cents damages and six cents costs found by the jury, and for the costs of increase. The defendant sued out a writ of error.

*I. Williams,* for the plaintiff in error, insisted that the sale of the property in Canada was void because made on *Sunday.* 1 *R. S.* 675,§ 71. A note or other instrument made on that day has been adjudged good, but it may well be doubted whether a *sale of property* ought to be so held, because on Sunday *process* cannot be served, and unless a party is incapacitated from transferring his property on that day, an undue advantage is obtained over creditors. Here, but for the intervention of Sunday, the creditor would have seized upon the goods previous to the transfer. The sale was void also because

NEW YORK,
May, 1835.

Boynton
v.
Page.

there was no note in writing, no delivery, and no payment of the purchase money—a previous indebtedness is not a payment within the meaning of the statute. Boynton levied upon the property before Page asserted his claim under the transfer. Clark was an incompetent witness. At all events the judgment must be reversed, the verdict being defective in not passing upon all the issues. 3 *Wendell*, 667. The bill of exceptions does not cure the error of the record.

*S. Stevens*, for the defendant in error. The statute preventing the transaction of business on *Sunday* is in derogation of the common law, and must be construed strictly. At common law every species of business may be transacted on that day, except that judicial proceedings cannot be had, and civil process cannot be served. The object of our statute was to prevent *public marketing*, the public exposure on Sunday of goods to sale ; it was not designed to reach a private transaction, not calculated to disturb others in their religious observances of that day. Besides, in the most extended construction of the statute, how could a sale of goods in Canada be a violation of our statute ; and it is not shown that there is any statute there forbidding the sale of property on Sunday. He cited 1 *Taunt*. 131, 3 *Barn. & Cress*. 232, 7 *id*. 596. Our statute is not as broad as that of England. The statute of *Massachusetts* is broader than ours, and yet a note given on Sunday has there been held to be valid. 10 *Mass. R*. 312. In *Connecticut*, a note given on Sunday is held void because the statute there forbids all manner of secular business referred to in 10 *Mass*. As to the statute of frauds, it is not shown there is such a statute in Canada ; and unless the law of the place where the contract is made is violated, this objection cannot be raised. But the case is not even within our statute. The interest of Strong in the property transferred was *one third*, and the property was not worth more than $100 ; his share therefore was less than $50, and the contract need not be in writing. Nor was any delivery necessary ; being the owner of *two-thirds* in his own right, and Strong having abandoned the property, the law cast the possession upon Page. An indebtedness is a good consideration. There was no delay by Page

in asserting his title after the transfer. The incompetency of Clark as a witness cannot now be objected to—besides he was not interested. As to the last objection, that the verdict is defective, the counsel insisted that within the decision of *Law* v. *Merrills*, 6 *Wendell*, 272, the judgment ought not to be reversed for this cause. Here, as in that case, it would have been impossible to obtain a verdict for the plaintiff on the general issue, had the defendant established his avowry on his pleas. Besides, here the bill of exceptions forms part of the record, and from it, it appears that the jury found for the plaintiff on all the issues.

*By the Court*, SUTHERLAND, J. The question is, who has the better title to the property replevied, Page or Boynton? The validity of the sale or transfer from Strong to page of his interest in this property, made in Canada, is objected to on two grounds: 1. As having been made on *Sunday*, and 2. As being void within the statute of frauds, not having been in writing. *Judicial proceedings upon Sunday* are prohibited by the common law. Any other business can lawfully be done upon that day, except so far as it is prohibited by statute. Our statute in relation to the observance of Sunday declares, that "No person shall *expose to sale* any wares, merchandises, fruit, herbs, goods or chattlels, on Sunday, except meats, milk and fish, which may be sold at any time before nine o'clock in the morning." 1 *R. S.* 676, § 71. This prohibition is evidently directed against the public exposure of commodities to sale in the street, or in stores and shops, warehouses or market places. It has no reference to mere private contracts, which are made without violating or tending to produce a violation of the public order and solemnity of the day. Every man is permitted, in those respects, to regulate his conduct by the dictates of his own conscience. The act of 29 *Charles* 2, ch. 7, § 1, enacts that "No tradesman, artificer, workman, colorer, or other person whatever, shall do or exercise any worldly labor, business or work, *of their ordinary callings,* upon the Lord's day." The construction given to this statute has been, that it prohibits only the prosecution of a *man's ordinary secular business* upon the Lord's day. The terms, *of their ordinary call-*

*Margin:* NEW YORK, May, 1835.

Boynton
v.
Page.

*ing*, have been held to qualify and restrict the general phraseology which precedes them. Thus, in *Drury* v. *Defontaine*, 1 *Taunt*. 131, it was held that the sale of a horse on Sunday, *by private contract*, by a horse dealer, whose ordinary business or calling was to *sell horses at auction*, was not prohibited by the statute. *Mansfield*, Ch. J., says, "To bring this case within the act, we must pronounce that either Drury or Hull worked within their *ordinary callings* on the Sunday. But the sale of horses *by private contract* was not Drury's ordinary calling, nor was it Hull's. His calling was that of a *horse auctioneer*, and he was not within his ordinary calling in selling this horse by private contract." The same doctrine was held in *Bloxsome* v. *Williams* 3 *Barn. & Cres.* 232, 10 *Com. L. R.* 60, and in *The King* v. *The Inhabitants of Whitnash Barn. & Cres.* 596, 14 *Com, L. R.* 100. In this last case it was held that a contract of hiring, made on a Sunday between a farmer and a laborer for a year, was valid, and that a service under it conferred a settlement. In *Massachusetts*, a note given on Sunday is not void ; in Connecticut it is—the phraseology of their statutes being different. *Geer* v. *Putnam*, 10 *Mass. R.* 312. The ancient and modern cases upon this subject are all referred to in *Story* v. *Elliott*, 8 *Cowen*, 27, where it was held that an *award* made on Sunday was void, being a *judicial* proceeding ; but that all other acts are lawful on that day, which are not prohibited by statute. *Vide also Sayles* v. *Smith*, 12 *Wendell.* 57. This objection, therefore, is not well taken.

Nor was the contract within the statute of frauds. Strong had no interest in any thing but the saddler's work remaining in the shop. The unwrought stock had been delivered over to Clark. Of the saddler's work, he owned one third only, and Page two thirds. The whole amount is shown to have been worth but $100. If the agreement between Strong and Page, in Canada, is to be considered a sale of Strong's interest in the saddler's work to Page, it was for an amount or price less than $50, and was therefore not within the 3d section of the statute. 2 *R. S.* 136, § 3.

There was no delay in the delivery or transfer of the possession, which could bring the case within the 5th section of the act. Strong having abandoned the possession of the

goods, I am inclined to think Page had a right, from his interest in the matter, to take immediate possession of them, without any authority from Strong.    But Strong's interest of course would have remained subject in his hands to the claims of his creditors, if it had not been transferred to Page.  I think it was a valid transfer, and vested in Page the whole title.

Clark was not objected to as a witness upon the trial, and the objection is now to late, if it were well taken.    But all the facts testified to by him were proved by other witnesses. It is very questionable whether he had any interest which would have rendered him incompetent.  A portion of the property attached by Boynton and replevied by Page, called the *unwrought stock*, had been delivered over to Clark as Strong's successor, and was in that manner in his possession. But it was immaterial to him whether he retained that stock or not, as Page was bound to furnish him with all the leather and other stock required in his business.    The value of this stock was about $19, and it is objected that as to this at least Page had shown no title, and cannot recover ; that the possession and title were in Clark.    The stock, I am inclined to think, until operations were commenced upon it and the process of working it up was begun,.may be considered as Page's or at all events he must have had a joint right with Clark to control it.    It is not for the defendants, upon the present state of the pleadings and under the circumstances of the case, to deny his right to recover that portion of the property, on the ground that the title and possession were in Clark.  Upon the merits, therefore, the judgment below is correct.

But the record is said to be defective.    The defendant pleaded first *non cepit*, and then several special pleas, alleging the title to the property to have been in Strong, and avowing and justifying the taking under an attachment.    To these pleas the plaintiff replied, taking issue upon them.  The jury have found simply that the defendant *did take and detain* the said goods and chattels of the said plaintiff, in manner and form, &c. and assess his damages at six cents ; but they take no notice whatever of the other issue.    This verdict is undoubtedly defective, and leaves the question of title to the property, undisposed of.    The plaintiff cannot, upon such a

NEW YORK,
May, 1835.

Comm'rs, &c.
of Warwick
v.
Judges of Or-
ange co.
finding, have a general judgment in his favor. The case of *Bemus* v. *Beekman*, 3 *Wendell*, 667, is precisely in point. The same defect existed in that case, and the judgment of this court was reversed in the court of errors upon that ground. *Law* v. *Merrills*, 6 *Wendell*, 272. It appears from the bill of exceptions in this case, which is attached to the record, that *all the issues* were in fact found for the plaintiff. But the finding of the jury is not properly a part of the bill of exceptions, and the record cannot be helped by it. The judgment must therefore be reversed, and a *venire de novo* must issue.

Judgment reversed.