Peckham, J.
 

 Two grounds for denying the prayer of the petitioner for the appointment of a commission have been argued before us. It has been urged (1) that the two original companies whose valid consolidation is herein denied were never themselves legally incorporated, and (2) if they were so incorporated, yet even then they could not become consolidated into a new corporation because there is no law under which such consolidation could be effected.
 

 We think neither ground is well taken
 

 As to the first. Both corporations were organized under the general railroad act of 1850 and its amendments. It is claimed that such act does not relate to the incorporation of street railroads. This claim is at war with the generally received construction of the act. Ever since its passage in 1850, or at least within a very few years thereafter, corporations for transporting passengers by horses as a motive power over railroads in the streets of cities have been formed under and by virtue of the provisions of such act, and no doubt has thus far been suggested as to the validity of such corporations. Corporations thus formed are in existence in Brooklyn, Albany, Binghamton, Kingston, Cohoes and other cities of the state. There is nothing in the act of 1850 which prohibits, outside of the city of New York, such corporations from being formed under its provisions, and the language of the act is general and broad enough to include corporations formed for such a purpose.
 

 
 *505
 
 One or two expressions in opinions written by judges of this court have been cited as evidence that the general railroad act of 1850 had no application to street railroads. The cases from which these extracts have been taken, are
 
 N. Y. Cable Co.v. Mayor, etc.,
 
 104 N. Y., 1-14; 4 N. Y. State Rep., 308;
 
 Matter of N. Y. District R. R. Co.,
 
 107 N. Y., 42-53, 54; 11 N. Y. State Rep., 753;
 
 People ex rel. Third Ave. R. R. Co.
 
 v.
 
 Newton,
 
 112 N. Y., 396, 401; 21 N. Y. State Rep., 8. Each one of the above cases arose in New York city, and in regard to that city it is admitted that the general railroad "act has now no application, for by chap. 10 of the Laws of 1860 it was made unlawful to thereafter lay, construct or operate a railroad in New York city except under the authority of the legislature to be thereafter granted. The remark of Judge Eapallo in the first cited case, that up to the time of the passage of the general surface street railroad act of 1884, there had been no law in force under which street railroads could be constructed, except the rapid transit act, the general railroad act of 1850 being inapplicable to street railways in cities, was not exactly accurate if applied to all the cities in the state, but was in entire accord with the truth in regard to the particular city, Hew York, which he was writing about and in which the corporation existed whose rights were then under review. The inclusion of the other cities of the state was not in any way material to his argument, and was probably a mere inadvertent expression of the learned judge, the important fact being that the general railroad act of 1850 did not apply to street railways in the city of Hew York. In the second case above cited, Judge Finch makes the remark that we had held that the general railroad act of 1850 had no application to street railroads, and he refers to the case of the
 
 Cable Co.
 
 above alluded to. The same may be said of that remark as I have just said of Judge Eapallo’s. It was made in relation to a Hew York company, which claimed the right to build its road under ground from the general railroad act of 1850, and it was stated that such act had no relation to street railroads, but that, if it had, the act of 1860, chapter 10, took it away so far as New York city was concerned.
 

 It was Hew York city which was in the mind of the learned judge, and not the applicability of the general railroad act to street railroad companies in other cities of the state. But he continued the discussion by expressly stating that the truth might be that the company derived its corporate existence from the act of 1850, but not its right to construct its contemplated road, because by the act of 1860 such right in Hew York city was thereafter to be the subject of special legislation. In the last case cited the question was not in issue, and the remark was a general one that the act of 1850 gives no authority for the construction of street railroads, and if it were limited to Hew York city (by reason of the passage of the act of 1860) it is certainly a correct statement of the fact It was made in reference to a Hew York corporation, and it was followed up by a statement that if any right were gained by an organization under that act, the company was
 
 *506
 
 required, to do the things mentioned in the opinion, and which, it was argued, left it without any authority to do the acts which it proposed to do.
 

 Rot one of the learned judges had the exact question in mind as to the applicability of the act of 1850 to any city other than Rew York, and in regard to Rew York the remarks of each were correct. The question is entirely open in this court, and we have no hesitation in saying that corporations might be legally formed under the act in question for the transportation of passengers or freight, or both, over railroads in the streets of cities where horses were to be the motive power, excepting in the city of Rew York.
 

 The legislature has recognized the general applicability of the Law of 1850 to street railroads, by the passage of the act, chapter 906 of the Laws of 1867, wherein it is enacted that § 31 of the Law of 1850 shall not apply to horse or street railroads, except as thereinafter provided; a clear implication that otherwise it would apply, and that the act generally did so apply. Undoubtedly there are some provisions in the act which can only be applied to railroads where the motive power is steam or some other power than horses. But that furnishes no argument against the application of any of its other sections to horse railroads. For more than twenty-five years, corporations of that nature have been formed under it, and. no state officer whose duty it would have been to refuse to file such articles of association if the act did not provide for their organization, has ever thus refused; but on the contrary, there would seem to have been an uniform recognition of the right to file such articles, and of the legality of this kind of corporation thus formed. Such acquiescence and recognition on the part of the officers of the government are of very considerable, if not of controlling weight in the interpretation of a general act of the legislature relating to public objects like the one under discussion.
 
 Easton
 
 v. Pickersgill, 55 N. Y., 310;
 
 People
 
 v.
 
 Dayton,
 
 id., 367. The consequences of a different construction at this late day, and after an acquiescence of so long a time would, or might be, disastrous in the highest degree to other interests existing, and founded upon the legality of an incorporation for horse railroad purposes under the act of 1850, and this court would be reluctant to give such a construction to the act unless called upon by the plainest language of the legislature, so plain indeed that there could be no rational argument advanced in favor of the other view.
 

 No such case is made out here. We conclude that the first ground for denying the prayer of the petitioner is untenable.
 

 The second ground we think there is no force in. By the act of 1869, chapter 917, which authorizes the consolidation of certain railroad companies, there was contained a clause in § 7, specially exempting street railroads from its provisions. Up to 1875, street railroads could not have taken advantage of the provisions of the act of 1869, but in 1875 the legislature passed an act entitled “ An act in relation to railroad corporations,” and being chapter 108 of the laws of that year, That act did not purport to be an amendment of the act of 1869, or of any act. It was original legislation upon the subject of railroad corporations and the'one subject was
 
 *507
 
 contained in the first section of the act, which provided that “ in any case where two or more railroad companies shall have been, or shall hereafter be organized under the general laws of this state, the whole of whose lines, as located by them respectively, shall form one continuous and connecting line of road, the said companies may consolidate their lines of road, stock franchises and property according to the existing laws of this state relating to the consolidation of railroad companies.’’ This act is no mere amendment of the act of 1869, nor does it purport to be so. The act of 1869, it is true, restricts the power to consolidate to a railroad company or corporation organized under the laws of this state, or of this state and any other state, and operating a railroad either wholly within, or partly within and partly without this state; and it is true that the act of 1875 does not contain any such restriction upon a railroad company that may avail itself of the privileges conferred by the act, but it not only takes away the restriction contained in the act of 1869, that it must be an organization operating a railroad, for it goes farther and by affirmative language it includes any case where- two or more railroad companies shall have been, or shall hereafter be organized under the laws of this state. That provision is wholly inconsistent with the restriction contained in the seventh section of the act of 1869, which says that the provisions of that act shall not apply to street railroads.
 

 It is true that repeals by implication are not favored, but where the provisions of the later statute cannot have their full force and effect without the repeal of the former statute, such former statute must be deemed to be repealed by implication, or otherwise the plain intent of the legislature, as evidenced by its latest expression, is prevented from due operation by an inconsistent former statute. In such cases, where the provisions are inconsistent, the later must prevail as the latest exhibition of the will of the law making power. By the first statute the legislature said its provisions shall not extend to street railroads. By the second statute it says that any railroad corporation, under the circumstances therein named, may consolidate according to the existing laws of the state relating to the consolidation of railroad companies. To restrict, therefore, this language to the same class of railroad corporations that were spoken of in the earlier statute, is to wholly fail to give effect to the plain language of the act. Full effect cannot be given to that language by merely saying that it shall include the case of railroad corporations which have not yet built, but have simply located their road. That is one enlargement effected by the statute of 1875. But the other is equally plain. We think no importance is to attach to the fact that the legislature, between 1869 and 1875, passed one or two special acts allowing companies that were then constructing railroads to consolidate. Before the act of 1875, it required a special act to include such a case. But after the act of 1875 companies then engaged in the construction of their railroads could consolidate under the provisions of that act, because the restriction contained in the act of 1869 was taken away and all railroad companies organized as above stated were, by that act, permitted to consolidate.
 

 
 *508
 
 It is unnecessary to continue the discusión further. The opinion delivered at the general term we think is entirely satisfactory upon the question, and we agree with the conclusions arrived at by that court For these reasons the order of the general term should be affirmed, with costs to the petitioner, and the proceedings remitted to the special term for further action.
 

 All concur.