**EDEN MUSEE AMERICAN CO., Limited, v. BINGHAM, Police Com'r.**

(Supreme Court, Special Term, New York County. January 22, 1908.)

1. SUNDAY—REGULATION—PUBLIC SPORTS—SHOWS.

    Pen. Code, § 265, entitled "Public Sports," provides that all shooting, hunting, fishing, playing, horse racing, gaming, or other public sport, exercises, and shows on the first day of the week, and all noise disturbing the peace of that day, are prohibited. *Held*, that the word "shows," under the rule of ejusdem generis, should be construed to mean public shows out of doors, like county fairs, horse shows, cattle shows, etc., and did not include an exhibition of paintings, statuary, wax figures, plaster groupings, and curios in a museum, unaccompanied by any musical or stage entertainment.

2. SAME—DESECRATION.

    All acts not otherwise unlawful and not prohibited by statute may be lawfully performed on Sunday.

3. SAME—CONTRACTS.

    All contracts relating to private business not prohibited on Sunday, if made on Sunday, are valid.

    [Ed. Note.—For cases in point, see Cent. Dig. vol. 45, Sunday, §§ 36–44.]

Action by the Eden Musee American Company, Limited, against one Bingham, individually and as police commissioner of the city of New York, to restrain defendant and the police force of the city of New York from interfering with the exhibition of plaintiff's figures, curios, etc., on Sunday. On motion for the continuance of a preliminary injunction pendente lite. Granted.

J. Aspinwall Hodge, for plaintiff.

F. K. Pendleton, Corp. Counsel, and Terence Farley, Asst. Corp. Counsel, for defendant.

GREENBAUM, J. The plaintiff moves for the continuance pendente lite of a preliminary injunction, which restrains the defendant as police commissioner from interfering with its Sunday exhibition of paintings, statuary, wax figures, plaster groupings, and curios where such exhibition is unaccompanied with any musical or stage entertainment. It is conceded that the exhibition in question does not come within the condemnation of any of the provisions of the charter of the Greater New York or of the city ordinances, and that the only question is whether it may be termed a "public show," within the

meaning of section 265 of the Penal Code.    Said section 265 is entitled "Public Sports," and provides:

"All shooting, hunting, fishing, playing, horseracing, gaming or other public sport, exercises or shows, upon the first day of the week, and all noise disturbing the peace of that day are prohibited."

The judicial interpretations of this section are not harmonious.    People v. Dennin, 35 Hun, 327, was a case where, on a Sunday, on private grounds and with the consent of the owner, three persons played ball by simply pitching it from one to another without noise.    The General Term on appeal unanimously held that "the essential character of the crime was wanting.    There was nothing to disturb the repose of the community."    In People v. Moses, 140 N. Y. 214, 35 N. E. 499, the defendant was convicted of the crime of Sabbath breaking for fishing on Sunday in a pond belonging to a club of which he was a member.    The pond was in the vicinity of a public highway and of residences, and within the view of a number of people.    The question there raised was that defendant's act did not constitute a "serious interruption of the repose and religious liberty of the community." The defendant's conviction, however, was affirmed by a vote of four judges; the three others dissenting.    Of the four judges, three held that the prohibition of fishing on Sunday was "absolute," irrespective of the given act being inoffensive to the sensibilities of any one.    The fourth judge concurred in the result upon the ground that the evidence in the record was sufficient to support a finding of the trial court "that the act complained of was committed under such circumstances as to constitute a serious interruption of the repose and religious liberty of the community."    It is thus apparent that, while a majority of the court affirmed the conviction, only a minority thereof held that the prohibition against fishing on Sunday was an absolute one.    The opinion in that case criticises the Dennin Case, supra, by saying that it had not been correctly decided, and proceeds to say that ball playing on Sunday, "in a place open to the view of the people who may be in the vicinity or may pass by, is condemned by the principles which lie at the bottom of the Sunday laws, and is an act of playing within the statute."    It may be noted in passing that Chief Judge Cullen, who was then a justice of the Supreme Court, wrote the opinion in the General Term in the Moses Case, 65 Hun, 162, 20 N. Y. Supp. 9.    He, too, referred to the Dennin Case.    He pointed out that the latter case proceeded upon the distinction "that while only public sports, exercises, and pastimes are forbidden, all shooting, hunting, and fishing, etc., are inhibited."    As I interpret his meaning, he held that the prohibition against "fishing" was absolute, but as to "sport, exercises, or shows" it was necessary to establish that they were "public," and that in such cases "to constitute the crime the act must disturb the repose of the community."    We thus find that four of the judges in the Court of Appeals sitting in the Moses Case, being a majority, evidently thought that the disturbance of the repose of the community is an essential element in the crime of Sabbath breaking.

The first section of the chapter of the Penal Code treating of Sunday violations, to wit, section 259, reads:

"The first day of the week being, by general consent, set apart for rest and religious uses, the law prohibits the doing on that day of certain acts hereinafter specified, which are serious interruptions of the repose and religious liberty of the community."

It seems reasonable, seeking the legislative intent and the meaning of the subsequent sections of the same chapter, to bear in mind the positive declaration in the opening section of the chapter that the statute contemplated the prohibition of the acts specified in the various sections as "serious interruptions of the repose and religious liberty of the community." A reading of section 265 in connection with section 259 would indicate that the Legislature must have had in mind that "shooting, hunting, fishing, playing, horseracing, and gaming" were prohibited only if "public," because after the word "gaming" it expressly says "or other public sport." Why speak of "other public sport," if it intended to restrain "private" sport? It doubtless is the fact that "shooting, hunting, fishing, and horseracing" are usually within the observation or hearing of others than those engaged in these sports, and in such cases there would appear to be a clear violation of the law. But in the cases of those who own vast preserves from which the public are excluded, and where no one but a trespasser could hear the report of a gun or witness the act of fishing, assuredly it may not be said that these acts are "public." That the section referred to "public" acts is further manifested by a consideration of the words "playing" and "gaming" in the same section. It will not seriously be argued that any act of "playing or gaming," such as a household game, quietly enjoyed in one's household or one's private grounds, out of the view of the "public," was intended to be prohibited under this section.

Applying the rule of ejusdem generis in construing the scope of the words "other public sport, exercises or show," it is necessary to consider the specific prohibitions that precede the above quoted words of general description. "Shooting, hunting, fishing, playing, horseracing, gaming," are specifically inhibited. Each one of these acts clearly contemplates outdoor activity, and the word "public" can only reasonably be interpreted as limited to public outdoor acts. The words "sport, exercises or shows" are in consonance with this interpretation. "Sports" and "exercises" both indicate action, and "shows" undoubtedly refers to exhibitions or displays like county fairs, horse shows, cattle shows, etc., which are conducted in the open. United States v. Buffalo Park, 16 Blatchf. (U. S.) 189, Fed Cas. No. 14,681, is an interesting case, which construed the words "other shows" in a federal statute, which provides for the payment of a tax for certain public exhibitions, performances, etc. These words were strictly limited by the particular ones which they followed, and were held not to include a driving track for horseracing open to the public. In my opinion, the acts mentioned in section 265 refer to such as take place in the open and within the public view, and therefore tend to disturb the peace of the day. I do not think it was intended to refer to acts performed within a building and not visible to a passer-by. My conclusions are fortified by the closing phrase of section 265, which prohibits "all noise disturbing the peace of the day," evidently designed

to cover such public acts as would not properly come within the meaning of the words "sport, exercises or shows," but which, nevertheless, would be offensive to the community and be "serious interruptions of the repose of the day." The peace, the quiet, and repose of the community are to be protected. Where these are not disturbed, the reason for the law ceases.

That such was the legislative intent in framing section 265 of the Penal Code is further made apparent by reference to section 277 of the Penal Code, which expressly forbids theatrical and other performances. If section 265, which was enacted simultaneously with section 277, is to be given the broad construction that a "show" is to include an exhibition of paintings or works of art, then surely a theatrical performance would be a "show," and come under its condemnation, and there would have been no need for the specific inhibition against theatrical and other performances within doors, found in section 277. Independently of and in addition to all that has been said, it is to be observed that a "show," within the meaning of section 265, should not be construed as referring to an exhibition of pictures, statuary, and passive works of art, if we consider the unquestioned acquiescence by the public authorities during all the years in the propriety of permitting museums of art and natural history and libraries to be opened to the public on Sunday. Such acquiescence has been recognized as a proper element to be considered in the construction of a statute. Troup v. Haight, Hopk. 372; People ex rel. Williams v. Dayton, 55 N. Y. 367; Power v. Village of Athens, 99 N. Y. 592, 2 N. E. 609; Matter of W. S. A. & P. R. R., 115 N. Y. 442, 22 N. E. 356; United States v. Alabama R. R., 142 U. S. 615, 12 Sup. Ct. 306, 35 L. Ed. 1134. Section 277 is an evidence of the exercise of the power of which the Legislature believed itself to be possessed absolutely to declare specific acts as interferences of the quiet and repose of Sunday. Hence we find that certain theatrical and other entertainments are absolutely prohibited on that day, irrespective of the fact that a given performance which comes within the description of the forbidden acts may be so quietly done that no serious interruption of the peace of the community thereby ensues. In such a case the naked proof of the inhibited performance doubtless would constitute the crime unless the power of the Legislature to make such a law were questioned.

But in the case before me it is unnecessary to consider the legislative power absolutely to forbid the doing of certain acts on Sunday, irrespective of their effect on the quiet and repose of that portion of the community which observes that day as the Sabbath. Nor does the circumstance in the case before me that the plaintiff is engaged in a business affect the result. As will be later shown, all acts not otherwise unlawful and not prohibited by statute are lawful on Sunday. The illegality of a given act must therefore be determined by a statute forbidding it. Many of the cases that have considered this question arose under former statutes, which have been in some respects repealed and in others modified. The English cases which have often been cited in our courts arose under statutes which differ from ours. A good illustration will be found in a reading of the case of Boynton

v. Pope, 13 Wend. 425, 429, approved in Merritt v. Earle, 29 N. Y. 120, 86 Am. Dec. 292. In that case Act 29 Car. II is quoted. It appears that under that act a person was prohibited in the pursuit of "his ordinary calling upon the Lord's Day." There is no such broad prohibition under our statutes. Section 266 forbids "all trades, manufactures, agricultural or mechanical employments upon the first day of the week," and section 267 prohibits "all manner of public selling or offering for sale of any property," excepting certain specified articles. As was said in Boynton v. Pope, supra, of this statute, which is substantially like the one in force when that case was decided:

"It has no reference to mere private contracts, which are made without violating or tending to produce a violation of the public order and solemnity of the day. Every one is permitted in those respects to regulate his conduct by the dictates of his own conscience."

In Merritt v. Earle, supra, it is said:

"Hence it has been held that a contract made on Sunday to work for a year was good and not within the statute [citing Rex v. Inhabitants of Whitnash, 7 B. & C. 596]."

The English case of Sandiman v. Breach, 7 B. & C. 100, is also there cited with approval as follows:

"It was held that the statute did not include the driver and owner of a stagecoach, and that the plaintiff might recover damages of the owner of the coach for not transporting him on Sunday in pursuance of a contract to be executed on that day, inasmuch as the statute did not make it illegal for stagecoaches to travel on that day. The statute does not prohibit the transportation of property on the Sabbath, either by land or water; and therefore a contract made for the transportation of property on that day would not come within its prohibition. At common law the observance of the Sabbath was a duty of imperfect obligation. Rex v. Brotherton, 2 Str. 702. Any private business may be lawfully done which the statute does not prohibit, and all contracts relating thereto are valid. Boynton v. Paige, 13 Wend. 425. It was held in Harrison v. Marshall, 4 E. D. Smith, 271, that in an action for an injury to a thing hired it was no defense that it was hired on Sunday. In Massachusetts it has been held that a promissory note made on Sunday is good. Geer v. Putnam, 10 Mass. 311."

In Eberle v. Mehrbach, 55 N. Y. 682, a contract for the sale of a house on Sunday was held not to be in violation of the statute, and "evidence that defendants were in the habit of exposing horses for sale was held immaterial, as the question was simply as to what was the character of the particular transaction."

I am aware of a few recent decisions of the Special Term of the Supreme Court in the Second Department, of which Gale v. Bingham, 109 N. Y. Supp. ——, is typical, construing the words "public show" in section 265 of the Penal Code as applicable to what are there designated as "moving picture shows"—a conclusion that might be urged as at variance with my interpretation of that section. A reading of the opinion of the learned justice who so held will, however, indicate that it appeared to have been taken for granted that section 265 referred to "public shows," whether in a building or in the open, and that moving pictures were "public shows." I do not regard these decisions as in harmony with those of the appellate courts or of other Special Term justices. Matter of Hammerstein (recently decided) 108 N. Y. Supp. 197, involved the construction of section 1481 of

the city charter (Laws 1897, p. 522, c. 378). As I read the opinion in the case it was there held that "all classes of public exhibitions such as are usually conducted upon a stage for the observation and amusement of the public" come within the condemnation of the Sunday laws. In the facts before me there is no question of any stage performance presented.

An interesting résumé of the origin of Sunday laws and of the English decisions on the subject will be found in Story v. Elliott, 8 Cow. 27, 30, 18 Am. Dec. 423, in the opinion of Chief Justice Savage, who, among other things, says:

"Sunday is stated in all the books to be dies non juridicus; not made so by statute, but by a canon of the church, incorporated into the common law. According to the history given by Lord Mansfield in the case of Swan v. Broome, 3 Burr. 1597, 2 Bl. 526, anciently the courts of justice did sit on Sunday. * * * By the common law, then, it appears all judicial proceedings are prohibited. All other acts are lawful unless prohibited by statute."

In Miller v. Roessler, 4 E. D. Smith, 234, 235, Judge Ingraham held:

"The mere making of a bargain on Sunday, however much it may violate the moral law, is not prohibited by statute in this state, and was not void at common law."

"Labor performed on Sunday is not ipso facto illegal." Sun Ass'n v. Tribune Ass'n, 44 N. Y. Super. Ct. 136, 141.

In Merritt v. Earle, 29 N. Y. 115, 122, 86 Am. Dec. 292, it is said:

"At common law the observance of the Sabbath was a duty of imperfect obligation. Rex v. Brotherton, 2 Str. 702."

It seems to me clear from these high authorities that, if the statute does not interdict exhibitions of the kind the plaintiff is desirous of conducting on Sundays, then the circumstance that it is a private business enterprise does not bring it within the bar of any of the Sunday laws. As the injunction is here expressly limited to plaintiff's exhibition of paintings, statuary, and other objects, and is not intended to permit any entertainment of the stage or of a musical nature, the plaintiff should not be interfered with by the police in the exhibition which it is asserted it is now conducting.

Motion granted.    Settle order on notice.