## PEOPLE v. KINGSTON.

(City Magistrate's Court of New York City.    April 19, 1912.)

1. SUNDAY (§ 29*)—THEATRICAL PERFORMANCES—STATUTES—EVIDENCE.

     In a prosecution for violation of Penal Law (Consol. Laws 1909, c. 40) § 2152, making it unlawful to exhibit certain performances on Sunday, evidence *held* to sustain a conviction.

     [Ed. Note.—For other cases, see Sunday, Cent. Dig. §§ 13, 67–72; Dec. Dig. § 29.*]

2. SUNDAY (§ 29*)—THEATRICALS—MANAGER—EVIDENCE.

     In a prosecution under Penal Law (Consol. Laws 1909, c. 40) § 2152, prohibiting certain Sunday theatrical performances, evidence *held* to show that defendant was manager of a prohibited performance.

     [Ed. Note.—For other cases, see Sunday, Cent. Dig. §§ 13, 67–72; Dec. Dig. § 29.*]

3. CRIMINAL LAW (§ 217*)—SUFFICIENCY OF COMPLAINT.

     Any statement under oath that brings to a magistrate notice that a crime has been committed, however crude or imperfectly drawn, is sufficient to justify the issuing of a warrant for the arrest of the party charged with the offense alleged to have been committed.

     [Ed. Note.—For other cases, see Criminal Law, Cent. Dig. § 439; Dec. Dig. § 217.*]

4. SUNDAY (§ 29*)—CRIMINAL PROSECUTION—PERSONS INDICTABLE—THEATER MANAGERS AND PERFORMERS.

     The purpose of Penal Law (Consol. Laws 1909, c. 40) § 2152, entitled "Theatrical and Other Performances on Sunday," forbidding certain performances on Sunday, and making every person aiding in such performance, and every owner or lessee of any building who leases it for such performance guilty of a misdemeanor, was to prohibit theatrical performances on Sunday, and, if given, the performers and any persons assisting the performance were all principals committing the same crime by violating the provision of the same statute.

     [Ed. Note.—For other cases, see Sunday, Cent. Dig. §§ 13, 67–72; Dec. Dig. § 29.*]

Samuel Kingston was charged with crime. Motion to discharge defendant denied.

Joseph F. Darling, of New York City, for the People.

Rogers & Rogers, of New York City (Gustavus A. Rogers, of New York City, of counsel), for defendant.

BUTTS, City Magistrate. In an affidavit verified January 17, 1912, the defendant Samuel Kingston is charged with violating section 2152 of the Penal Law (Consol. Laws 1909, c. 40), in that on Sunday evening, December 17, 1911, being then and there the manager of a theater known as the Academy of Music, situate at the corner of Fourteenth street and Irving Place, in the city of New York, that he, said defendant Samuel Kingston, willfully and knowingly aided in exhibiting dramatic performances, tragedies, dances, comedies, and negro minstrelsy in public, which were performed at said theater on the night

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

in question, and that the said defendant also on that evening assisted in taking the tickets of persons seeking admission to the theater.

[1] The evidence produced by the people before me establishes conclusively that at the time and place above stated there was a theatrical performance open to the public produced at said theater. In the auditorium thereof were assembled several hundred people. There was a stage set with scenery appropriate for the different exhibited acts. There was an orchestra to accompany the singing performers, a curtain rose and fell between the several acts, and, in fact, all the accessories and accompaniments of a dramatic performance were proved to have been in operation on the night in question at said theater. Several of the acts or performances were described in detail by the complainant. It will be unnecessary to set forth herein more than one of such performances, because it is typical of all the rest. The witness referred to testified as to such act substantially as follows: Two cards were placed on the stage announcing "Bookman and Gross." Two women dressed as men and having their faces blacked sung several comic songs, talked with each other in negro dialect, distorted their faces, producing great laughter in the audience, and one of the performers described to the other a new fashion of embroidering the names of women on their stockings, until one woman had her name embroidered so high up that the police stopped it. The evidence as to this act and the other acts there performed by the several actors, there being in all 10 numbers exhibited, establishes beyond any doubt that at the time and place in question dramatic performances, consisting in part of said negro minstrel act aforesaid, were exhibited to the public in violation of said section 2152 of the Penal Law. No attempt has been made on the part of the defendant to disprove the violation of the section of the Penal Law in question on the evening of Sunday, December 17, 1911, at the Academy of Music.

[2] The testimony taken upon the examination largely dealt with the alleged connection of the defendant Kingston with the management of Sunday evening performances at said Academy of Music. Indeed, it is strongly urged by his counsel that the evidence fails to show that the defendant was at the time the manager of said theater. But the evidence is not denied that on the night in question he assisted in taking tickets at the entrance of said theater from those who had purchased tickets entitling them to admission to the performance then and there given. Without referring specially to all the evidence taken upon the alleged management of the Sunday evening performances at the Academy of Music, it is sufficient to say that the evidence in my opinion establishes sufficiently that the defendant Samuel Kingston was the manager of the Sunday evening performances given at the Academy of Music for some period of time prior to Sunday evening, December 17, 1911. The witnesses Nolan and McNamee were employés under him. They took orders from him as manager. He occupied a room within the theater building upon the door of which was printed the word "Manager." The witness Nolan had charge of the stage hands who were employed at the Sunday evening performances, and always made up the pay roll for salaries, including his own, and

submitted them to the defendant. No articles needed for any perform-ance and known as "properties" could be purchased without consulting the defendant, and specific instances were detailed by the witness No-lan and also the witness McNamee as to transactions of that nature between them and the defendant. At Sunday evening performances Nolan would not ring up the curtain for the beginning of the same until he had reported to defendant Kingston, and in rush hours of Sunday evenings the defendant would aid the ticket takers at the door.

This state of affairs existed up to November 25, 1911, when, owing to some trouble, the witnesses McNamee and Nolan and others quit the employ of the management of the Academy of Music, and it is urged by defendant's counsel that, even conceding the defendant to have been the manager up to November 25, 1911, there is no proof that he was such manager on December 17, 1911, when the said Sun-day evening performance was given. But the evidence satisfies me that the defendant Kingston was the manager of the Sunday evening performances given at the Academy of Music up to November 25, 1911, and it appearing that on the following December 17, 1911, he was still at the said theater taking tickets as it had been theretofore his custom to do during the rush hours, it is a fair presumption, in the absence of a denial by the defendant, that the defendant's relation-ship to said theater as manager still continued, and I hold that the evidence justifies such presumption.

From this view of the case it follows that section 2152 of the Penal Law was violated on the night of Sunday, December 17, 1911, at the Academy of Music. The defendant must therefore be held for trial, unless the court should determine in his favor the motions made by his counsel at the close of the people's case: First, that the complaint herein is defective as it fails to sufficiently charge the defendant with a crime; and, second, that on all the evidence the defendant cannot be held for having violated said section 2152 of the Penal Law.

[3] The first motion of the defendant must be denied. The com-plaint herein sufficiently informed the magistrate that a crime had been committed, and that the defendant was charged with having commit-ted that crime. Any statement under oath that brings to the magis-trate notice that a crime has been committed, however crudely or imperfectly drawn, is sufficient to justify the issuing of a warrant for the apprehension of the party charged with the offense alleged to have been committed.

[4] The second ground urged upon the court why the complaint herein should be dismissed and the defendant discharged is more seri-ous, and involves the construction of section 2152 of the Penal Law and the decisions of the Court of Special Sessions of the City of New York upon the meaning and scope of such section. It is clear that, if the decisions referred to declare the law, the defendant must be discharged. In support of his contention defendant's counsel has cited the case of Eden Musee v. Bingham, 58 Misc. Rep. 644, 108 N. Y. Supp. 200, decided by Judge Greenbaum, and the case of Keith & Proctor Co. v. Bingham (Sup.) 108 N. Y. Supp. 205. But neither of said cases involved a Sunday theatrical performance. The former

referred to an exhibition within doors, and the latter to a moving picture show, and both were decided upon the ground that such shows did not tend to disturb the peace and order of Sunday. The case of People v. Hemleb, 127 App. Div. 356, 111 N. Y. Supp. 690, was decided on similar grounds. Whether these cases correctly decide the law of the state must some time be settled by the Court of Appeals. It must be observed, however, that as to Sunday theatrical performances Judge Greenbaum in the case above cited uses this strong and unequivocal language:

"Hence we find that certain theatrical and other entertainments are absolutely prohibited on that day, irrespective of the fact that a given performance, which comes within the description of the forbidden acts, may be so quietly done that no serious interruption of the peace of the community thereby ensues. In such a case the naked proof of the exhibited performance doubtless would constitute the crime, unless the power of the Legislature to make such a law was questioned."

Before proceeding to construe section 2152 of the Penal Law in the light of the decisions of the Court of Special Sessions above referred to, it may be well to remember section 2140 of the Penal Law, which as the opening section of article 192 of said law relating to the Sabbath, declares as follows:

"The first day of the week being by general consent set apart for rest and religious uses, the law prohibits the doing on that day of certain acts hereinafter specified, which are serious interruptions of the repose and religious liberty of the community."

Theatrical performances are included in such prohibited acts.

In construing the Sunday Law there should be no suggestion or even suspicion that such construction was moulded by any religious sentiment, for such a construction could not be tolerated, and indeed would thwart the high purpose of the Legislature in enacting said law. But it is justifiable that such construction should be declared in the light of the established policy of the state, set forth in the Constitution and laws of the state and its highest courts, as to the observance of the Sunday Law, not in the interest of any class or creed, but rather in the interest of the whole people, whose Legislature enacted that the Sabbath should be set apart for rest and religious uses. And if to-day that law is openly violated, under one pretext or another, and if one of the venerated institutions of the state is crumbling away, overthrown, and partially demolished by those who assail it, apparently unrebuked, let it be understood that the highest courts of one state have declared its high purpose and settled forever its constitutionality. The responsibility for its violation is to be charged to those whose office casts upon them the public duty to see that all the laws of the state are observed by all the people of the state, and that all who violate such laws should be brought to justice. Let no court or judge in examining and deciding a case like the one at bar fail to realize that the question involves the integrity of the Christian Sabbath and all that it implies, fortified by views and decisions of great jurists who have investigated and decided questions of 'this nature so vital to the people of the state.

In the case of Lindenmuller v. People, 33 Barb. 548, the court considered and decided an alleged violation of the Sunday Law by the defendant and appellant in the city of New York, in that he exhibited a certain theatrical performance publicly on Sunday. Henry L. Clinton and James T. Brady represented the defendant, and John Anthon and Nelson J. Waterbury (district attorney) represented the people. Among other things the court, by Allen, J., decided:

"It is not disputed that Christianity is part of the common law of England. In Rex v. Woolston, Str. 83-4, the Court of King's Bench would not suffer it to be debated whether to write against Christianity in general was not an offense punishable in the temporal courts at common law. The common law, as it was in force April 20, 1777, subject to such alterations as have been made from time to time by the legislature, and except such parts as are subsequent to the Constitution, is, and ever has been, a part of the law of this state. Const. of 1846, art. 1, § 17; Const. of 1821, art. 7, § 13; Const. of 1777, § 25. * * * But it is urged that it is the right of the citizen to regard the Sabbath as a day of recreation and amusement, rather than a day of rest and religious worship, and that he has a right to act upon this belief and engage in innocent amusements and recreations. This position it is not necessary to gainsay. But who is to judge and decide what amusements and pastimes are innocent, as having no direct or indirect baneful influence upon the community, and as not in any way disturbing the peace and quiet of the public, and as not unnecessarily interfering with the equally sacred rights of the conscience of others? But whatever the reason may have been it was a matter within the legislative discretion and power, and their will must stand as the reason for the law. We could not, if we would review their discretion, and sit in judgment upon the expediency of their acts. We cannot declare that innocent which they have adjudged baneful and have prohibited as such. Their act in substance declares a Sunday theater a nuisance, and deals with it as such."

The doctrine laid down in this case was expressly approved in the case of Neuendorff v. Duryea, 69 N. Y. 557, 25 Am. Rep. 235, where the court (per curiam) says:

"Here, again, it is enough to refer to the decision in Lindenmuller v. People, supra, which having never been appealed from, or in any other manner questioned, will be held as declaring the law of this state. It is there held that the Christian Sunday may be protected from desecration by such laws as the Legislature in its wisdom may deem necessary, and that it is the sole judge of the acts proper to be prohibited with a view to the public peace. The subject is exhausted in the Lindenmuller Case, supra, and the true grounds of judgment there occupied, and all the arguments on this branch of the case in the present state of civil society in this country, are advanced and elaborated. It is needless to repeat them."

In the People v. Moses, 140 N. Y. 214, 35 N. E. 499, the court, by Judge Earl, says:

"The Christian Sabbath is one of the civil institutions of the state, and that the Legislature for the purpose of promoting the moral and physical wellbeing of the people and the peace, quiet, and good order of society has authority to regulate its observance and prevent its desecration by any appropriate legislation is unquestioned. Lindenmuller v. People, 33 Barb. 548; Neuendorff v. Duryea, 69 N. Y. 557 [25 Am, Rep. 235]."

See, also, the very able opinion of O'Gorman, J., in Re Hammerstein, 57 Misc. Rep. 52, 108 N. Y. Supp. 197; People v. Havnor, 149 N. Y. 195, 43 N. E. 541, 31 L. R. A. 689, 52 Am. St. Rep. 707.

Is it not apparent that all courts in construing the Sunday laws of

the state should have in view the purpose of the Legislature in their enactment? Among the various enactments of the Sunday Law is section 2152 of the Penal Law, which provides as follows:

"The performance of any tragedy, comedy, opera, ballet, farce, negro minstrelsy, negro or other dancing, wrestling, boxing with or without gloves, sparring contests, trial of strength, or any part or parts therein, or any circus, equestrian or dramatic performance or exercise, or any performance or exercise of jugglers, acrobats, club performances or rope dancers on the first day of the week is forbidden; and every person aiding in such exhibition, performance or exercise by advertisement, posting or otherwise, and every owner or lessee of any garden, building or other room, place or structure, who leases or lets the same for the purpose of any such exhibition, performance or exercise, or who assents to the use of the same for any such purpose, if it be so used, is guilty of a misdemeanor.

"In addition to the punishment therefor provided by statute, every person violating this section is subject to a penalty of five hundred dollars, which penalty 'The Society for the Reformation of Juvenile Delinquents' in the city of New York, for the use of that society and the overseers of the poor in any other city or town, for the use of the poor, are authorized, in the name of the people of this state, to recover.

"Besides this penalty, every such exhibition, performance or exercise, of itself, annuls any license which may have been previously obtained by the manager, superintendent, agent, owner, or lessee, using or letting such building, garden, room, place or other structure, or consenting to such exhibition, performance or exercise."

The position of the defendant's counsel as taken in his points submitted herein is stated as follows:

"In the People v. Hammerstein et al., 139 N. Y. Supp. 644, and to which reference is hereinafter made, the decision sustained a demurrer to a complaint which is more complete and more direct than the one sworn to by Hannon in the case at bar, and in declaring the law Judge Olmstead, writing for the Court of Special Sessions, followed the decision which had been previously rendered by that court in May, 1909, in the case of People v. Surratt, in which it was held that even the actor himself or herself is not liable under section 2152, and that, if the words 'or otherwise' following the word 'posting' is given any other meaning except the limited one employed in the People v. Hammerstein, the actor or actress would certainly be liable under section 2152 (which the Court of Special Sessions has held is not the case), for no one more directly aids in an exhibition or performance than the actor or the actress."

In the opinion of the Court of Special Sessions referred to above the court, by Olmstead, J., says:

"The sole purpose of the Legislature in this enactment (i. e., section 2152 of the Penal Law) was to provide for a new class of Sabbath breakers; that in that class the theatrical manager and the owner or lessee of the theater were to be treated as principals, and the others who advertised the Sunday show, no matter how or on what day they did so, so long as they did it with knowledge, might be prosecuted for aiding."

By virtue of section 2152 of the Penal Law there are two groups of persons who may violate its provisions: First. Those who are concerned in the exhibition of a dramatic performance on Sunday. Second. Those who aid such performance by advertising, posting or otherwise. By this decision (People v. Hammerstein) the Court of Special Sessions, it would appear, decided that only theatrical managers and the owners and lessees of theaters, and those who aid any theatrical

performance by advertising, posting, or otherwise, can be found guilty of violating section 2152 of the Penal Law relating to theatrical performances on Sunday.  Indeed, in that case before the court and also in a former case (People v. Surratt) certain actors charged with having actually performed their parts on the stage on Sunday were discharged.  Can it be possible that these decisions correctly construe the section of the Penal Law under consideration?

In apt words and without equivocation that section (2152 of the Penal Law) declares that:

"The performance of any tragedy, comedy .* * * negro minstrelsy * *  on the first day of the week is forbidden."

Therefore it follows that, if any such tragedy or comedy is performed, such performance must be by actors who take part in a performance forbidden by law.  It follows also that, if actors perform, there are persons who hire them or procure them to act in such performance.  Such persons are those usually interested pecuniarily or otherwise, as owner or manager, in giving the performance forbidden by law.  There must also be persons who aid in the theatrical performance in various capacities.  If on any Sunday in this state a public theatrical performance is produced upon a stage, all who are engaged in aiding or furthering such performance, forbidden by law, and all engaged therein, whether as owner of the business that produced the play, the manager of the concern, the actors who take part therein, the ticket seller, the ticket taker, the ushers, all in fact who are present, aiding and abetting the forbidden performance, are violators of the law.  "A person concerned in the commission of a crime, whether he directly commits the act constituting the offense or aids and abets in its commission, and whether present or absent, or who directly or indirectly counsels, commands, or induces or procures another to commit a crime, is a principal."  Section 2, Penal Law.

This court is urged to follow the decision of the Court of Special Sessions in the cases above referred to on the ground that the doctrine of ejusdem generis (of the same kind, class or nature) limits the application of section 2152 of the Penal Law only to owners, etc., who produce theatrical performances, and those who aid such performance by advertising, posting or otherwise, as provided in such section.  I am constrained to hold that the doctrine of ejusdem generis has no application whatever to the construction of said section.  Indeed, it seems perfectly clear to me just why that portion of the section relating to advertising, etc., was added to the Sunday Law, and why it still remains a part of said section.  Although Sunday theatrical performances were forbidden, it was found that such performances were advertised and posted.  Persons engaged in advertising or posting such Sunday theatrical performances could not be held as violators of the law as principals, as being present aiding or abetting in any performance on Sunday, because they were not present when such crime was committed—i. e., when the Sunday theatrical performance was given—within the definition of and principles of the criminal law before the Penal Code or after its enactment.  It was for that reason that the Legislature added a new class of persons who might be amenable to

the criminal law; i. e., those advertising or posting notices as to such Sunday performances. And thus section 2152 of the Penal Law forbids theatrical performances on Sunday, and makes liable all who directly or indirectly are responsible for such forbidden production, and also those who further the same by advertising, posting or otherwise.

For the Court of Special Sessions of the city of New York and its judges I have the highest respect. With regret I respectfully dissent from its decisions in the two cases above referred to. In my opinion said decisions are in conflict with the law enacted in section 2152 of the Penal Law, and not in accord with the spirit of the Sunday Law as declared by the higher courts of the state. It is to be regretted that there is no direct authoritative decision by the Court of Appeals upon the important question now at bar. All laws should be impartially enforced, and nothing tends to bring the administration of justice into contempt as the unequal enforcement of laws. Who is responsible for the condition that the storekeeper who sells his wares on Sunday, or performs labor on that day not actually necessary, is arrested and punished for violating the Sunday Law, and yet in every part of our city theaters exhibit theatrical performances to the public on Sunday forbidden by law, and apparently under the sanction of law? If such theatrical performances on Sunday are lawful, and shall be so declared, all will acquiesce, but, if they are unlawful, all persons must obey the law, or, violating it, be tried, and, if found guilty, punished according to law.

The motion of the defendant to discharge the defendant is denied.