# Levi Smith, an Alleged Lunatic. Appeal of George W. Smith.

*Insanity—Insane distinguished from weak minded.*

Where the evidence shows that an alleged lunatic while he is weak minded yet has shown sufficient capacity to manage providently the earnings of the past ten years, and that he has control of the powers of mind, however limited they may be, he cannot be said to be of the class of persons who are to be held to be incapable of managing their own estates by reason of insanity.

Argued Oct. 26, 1899. Appeal, No. 160, Oct. T., 1899, by George W. Smith, trustee of Levi Smith, relator, from decree of C. P. Northumberland Co., Feb. T., 1883, No. 140, dismissing exceptions to master's report. Before RICE, P. J., BEAVER, ORLADY, W. W. PORTER, W. D. PORTER and BEEBER, JJ. Affirmed. Opinion by ORLADY, J.

Petition to supersede and determine an inquisition in lunacy. Before SAVIDGE, P. J.

It appears that on November 23, 1885, Levi Smith was found by verdict of a jury to be a lunatic. On May 7, 1897, he filed a petition asking to have the commission and inquisition thereupon superseded and determined, on which the court made an order referring the matter to W. H. Hackenburg to take testimony and report the facts to the court according to law.

The master found as facts that there had been no change in the mental condition of Levi Smith since he was adjudged a lunatic by the inquisition and verdict of the jury; that Levi Smith has not been restored to his reason; that Levi Smith is a person of unsound mind, unable to take care of or manage his own affairs or estate; that Levi Smith is a lunatic and does not have lucid intervals.

The master recommended that the petition to supersede and determine the inquisition of lunacy be dismissed. That the costs contained in the report to be paid out of the estate of the petitioner.

Exceptions were filed to the master's report, which were sustained in the court below, which reversed the master's findings

of fact, finding that the petitioner Levi Smith, has been restored to his reason and is capable of managing his own affairs; and superseding and determining the inquisition in lunacy.

George W. Smith, trustee, appealed.

*Errors assigned* were (1) in reversing master's findings of facts. (2) In finding that Levi Smith had been restored to his reason and was capable of managing his affairs. (3) In decreeing that the inquisition in lunacy is therefore superseded and determined. (4) In making the following decree, July 13, 1899: "We reverse the master's findings of fact, and find that the petitioner, Levi Smith, has been restored to his reason, and is capable of managing his affairs. The inquisition in lunacy is therefore superseded and determined. It is directed that the cost and fees be paid in accordance with the recommendation of the master. We note an exception, and seal a bill for the relator."

*H. M. Hinckley*, for appellant.—In Morgan's Appeal, 25 W. N. C. 532, which was a case where the court had reversed the master's findings of fact, the Supreme Court in reversing, says:

"Was the master also right upon his facts? Where the findings of the master are approved by the court, we have little difficulty. In such cases clear error must be pointed out. It is not enough that there is a conflict of testimony. In such instances the master is in a better position than either the court below or this court, to weigh the evidence and decide intelligently upon it. In this case the master was also examiner and had the witnesses before him; he had the advantage of their manner and appearance to aid him in arriving at the truth. While we hesitate to differ from so able a jurist as the learned president of the court below upon the facts, we are yet sensible that we have equal advantage with him in arriving at the truth. In either case, we have to take the testimony as it appears in cold type, without the benefit of having the witnesses before us face to face."

In the present case the master saw the witnesses face to face; noted their manner of testimony; had the lunatic in his presence, and had all the advantages of judging which the witnesses had: the court had nothing but the testimony in "cold type."

*Chas. A. Sidler*, with him *S. P. Wolverton*, for appellee.—
Where the findings of a master are approved by the court, the
Supreme Court will not disturb them except for manifest er-
rors; there must be more than a mere conflict of testimony.

Where, however, the findings have been overruled the Su-
preme Court will examine, the testimony de novo: Morgan's
Appeal, 25 W. N. C. 532.

When the appellate court is satisfied that facts have been
found without proof, or material facts established by the proofs
have not been found, it follows that there has been plain mis-
take: Worrall's Appeal, 110 Pa. 362.

" The inquisition in lunacy proceedings is for the benefit of
the friends; and if the friends do nothing under the inquisition,
i. e., have a committee appointed to care for the person and
property of the lunatic, especially after the lapse of thirteen
years, the fair presumption is, that the lunatic is restored, or
the drunkard is reformed."

The onus of proof rests not upon the petitioner in these pro-
ceedings, but upon the next friend at whose instance the pro-
ceedings were begun, and therefore he must show beyond a
reasonable doubt that the adjudged lunatic is at this time a
lunatic: Bixler v. Gilleland, 4 Pa. 156; Leckey v. Cunning-
ham, 56 Pa. 370.

" All writers agree that lunacy is a disease."    A person whose
mind is undeveloped, whether he is called weak-minded, or a
congenital imbecile, is not such a person as is contemplated by
the statutes: Gaul's Est., 7 W. N. C. 522; Com. v. Meredith,
14 W. N. C. 188.


OPINION BY ORLADY, J., February 16, 1900:

Levi Smith was adjudged a lunatic February 6, 1883, upon
an inquisition which was traversed, and after the verdict of
a jury the proceedings were confirmed absolutely.   No com-
mittee was appointed by the court to take charge of his person
or estate.   On May 7, 1897, Levi Smith presented his petition
to the court of common pleas of Northumberland county, in
which he set forth that he had " become restored to his reason
and is perfectly sane and desires that his incapacity to transact
business for his support, and the stigma incident to being an
adjudged lunatic be removed," and prayed the court to take

proof of the said facts and to make an order that a commission be issued in the case; and that the inquisition taken thereon, and all proceedings relating thereto, be suspended or altogether superseded and determined as the court shall decide, as provided by section 63 of the Act of June 13, 1836, P. L. 589. The court appointed a master to take testimony and to report the facts, and in the report returned under this proceeding, the master found as facts that there had been no change in the mental condition of Levi Smith since he was adjudged a lunatic by the inquisition and verdict of the jury; that he had not been restored to reason; that he is a person of unsound mind, unable to take care of or manage his own affairs or estate, and that he is a lunatic and does not have lucid intervals.   To this report exceptions were filed, and after hearing in court, the facts found by the master were reversed by the court, and it was found and decreed that the petitioner, Levi Smith, had been restored to his reason and was capable of managing his affairs, therefore the inquisition was superseded and determined.

It is conceded by the parties in interest that the sole question before the court on the petition of the adjudged lunatic was as to whether the lunatic (after the finding by the jury in 1883) had been restored to reason, not as to what his condition was then.

By section 67 of the act of 1836, the word "lunatic" is construed to mean and include every person of unsound mind whether he may have been such from his nativity, as idiots, or have become such from any cause whatever.

The findings by the master and the court are as opposed to each other as it is possible to express in language.   The master finds, " He has no idea of his own age, could not count a sum of money in various bills exceeding the sum of $35.00.   During the two days that the evidence was being taken, he sat by in listless silence, apparently with little or no comprehension of what was being done or its importance to himself.   Every word and act and the very appearance of the man showed, it seemed to the master, a simple-minded imbecile; as some of the witnesses put it, a man with the mind of a child.   With him it is not mere weakness of mind or gross ignorance, but it is more; it is want of mind and unsoundness that makes him,

although perfectly harmless, incapable of managing his own affairs and estate and brings him within the pale of lunacy. He was then a harmless lunatic and continues so to be at the present time, and after weighing the evidence on both sides the master has come to the conclusion that Levi Smith now is and has been for many years a lunatic, unfit to be intrusted with the management of his own affairs."

The learned court below after reviewing the testimony, said: "We cannot reach the conclusion that Levi Smith is of unsound mind, or abnormally weak-minded, so as to be incapable of managing his own affairs, while of a low order of intellect, he is not a lunatic. This conclusion has been reached after a most careful examination of the testimony, for our inclination has been to confirm the master, if the evidence reasonably warranted it. More than twenty intelligent and disinterested witnesses who have known the petitioner during the past ten or twelve years and who have seen him at all times and under all conditions testified to his sanity. He has worked for many of them and lived with many of them. They had every opportunity to observe his speeches and actions. During all this time nothing indicating unsoundness of mind has been noticed. It may be safely said that if Levi Smith had shown any evidence of unsoundness of mind, it would have been known by the people with whom he lived and associated during the past ten years. That he could during all this time have been insane and yet given no outward manifestation of his condition is next to impossible. He was sober, honest and industrious. He performed all kinds of farm labor, drove team, delivered goods, carried mail and was intrusted with money to deposit in bank. He did not squander his money but lived frugally and so husbanded his small earnings as to at all times keep himself from want."

We have gone carefully over all the testimony in this case and conclude that the findings by the court below are correct. The conclusion reached depends largely upon the point of view of the examiner, and the findings by the master are clearly right if the theories of the learned experts on whose testimony he bases his conclusions are to be applied in such a case as the one now before us. A physician of large experience, testified very positively and clearly that he regarded Levi Smith as a subject of congenital imbecility; and that fact being found, it is easy to fol-

low him to his theoretical conclusions. He was with the adjudged lunatic about two hours and in that short period and with but one examination he came to the conclusion that Levi Smith's condition had not changed. But after fully explaining what he found and concluded, he frankly states that this subject, " is hardly a case for an expert, any one of good intelligence, I mean a man of very good intelligence and entirely unprejudiced, would be able to perceive the man's mentàl defects. It does not require an expert to do it."

The testimony in favor of the petitioner is fairly summarized in the quotation taken from the opinion of the court.

The judgment of the court in 1883, which had jurisdiction both of the subject-matter and the parties to it, was binding and conclusive as to all matters in that controversy.

While there has been earnest contention in the case as to which side had the burden of proof, it is not at all material in the light of the facts as presented. . The verdict of the jury stands until reversed by a competent tribunal. The attack on that verdict was made by the petitioner who seeks to supersede it by a decree which will relieve the petitioner from its effect. The burden of proof lies upon him who substantially asserts the affirmative of the issue; and while sanity is presumed in the first instance, after a finding by a competent tribunal the fact of insanity, the presumption then is, that that condition continues until the bar is successfully removed. But the solution of this question does not depend on the refinements of pleadings. The petitioner cited was or was not within the statutory description of a lunatic. If the condition of 1883 continued, the finding of the master was correct. On the other hand if he had been restored to reason the conclusions of the court are correct. Sanity and insanity are to be regarded as conditions considered in reference to other conditions; and while it is extremely difficult to give any general definition of legal insanity, the degree or grade of impairment from normal conditions in the civil law is quite different from that fixed in the decision of the criminal courts, where insanity in law covers nothing more than the relation of the person to the particular act which is the subject of judicial investigation. " The legal problem must resolve itself into the inquiry, whether there was mental capacity and moral freedom to do or abstain from doing the particular act:" 1 Beck, Med. Jur. 761 *ff*. The word has

been frequently used to designate all mental impairments and deficiencies formerly embraced in the terms lunacy, idiocy and unsoundness of mind; and in this issue it is only necessary to determine as a fact whether or not Levi Smith is a lunatic within the meaning of the act of 1836. There are many decisions holding that merely weak-minded persons or imbeciles proper are not contemplated by the statute of June 13, 1836; and in order to secure the appointment of a committee for one who is so weak in mind that he is utterly unable to take care of his property, and is liable to dissipate or lose it or to become the victim of designing persons, the relatives of such person are authorized to institute proceedings under the Act of June 25, 1895, P. L. 300.

It is practically conceded by the parties to this controversy that Levi Smith is harmless so far as the care of his own person is concerned, and that practically the protection of his property is the main object of the proceeding. As was said by Chief Justice THOMPSON, in Commonwealth v. Schneider, 59 Pa. 328, " It is practical, that the test of liability to a commission, should depend greatly on that unsoundness of mind which discloses incompetency to management and the care and protection of property in a rational manner. It is not to be doubted that a finding, that the party from unsoundness of mind, is incapable of managing his affairs, is liable to a commission, although not totally incapable of taking care of himself. Mere weakness of mind, but not an abnormal condition, and short of idiocy, is not a ground for a commission. If there be a capacity to manage, as the result of consecutive reasoning, although the management might not be such as intellectual vigor and skill might approve, the jury would not be justified in finding the party a lunatic under the act of assembly."

It appears from this record that Levi Smith is entitled under the will of his father to certain interests in his father's estate, and the danger of mismanagement or loss of that property to him is averted by the fact that his interest is in trust and cannot be affected by these proceedings.

The finding of the master is entitled to great weight and, other things being equal, possibly to greater weight than that of the reviewing courts, for the reason that he had the witnesses and the petitioner before him and their manner of testifying might give him additional aid towards arriving at the truth.

But we feel that his conclusions are not warranted by the testimony more on account of the theory on which he proceeds than his legal deductions from the facts as found by him. The large number of witnesses called by the petitioner who had been in personal contact with him for many years preceding the inquiry, agree that he was not so affected as to be classed as of unsound mind; and many of the witnesses for the relator fail to state any circumstance from which they draw their conclusion, and those who give the facts on which they base their judgment, detail circumstances which are wholly insufficient in law to warrant the conclusion they reach.

The subject is over sixty years old; he can neither read nor write; he never received any education; his eyesight is very deficient by reason of a strabismus and he suffers from a muscular impediment in the throat affecting his speech, and is not very familiar with the English language but can express himself in the German language intelligently to those who are familiar with his peculiar expressions; his memory is as active and as accurate as could reasonably be expected in a case like his. He is easily confused and, when not willing to answer questions, stands mute. His limitations are very marked, and as the learned expert for the respondent aptly says, "His friends and neighbors if unbiased and intelligent are better judges of his mental condition than any other class of persons." To this class he appealed and produced a large number of witnesses, farmers, laborers, lawyers, judges, who had been in his neighborhood and had frequently seen him during a period of two to twelve years, all of whom united in saying that he has not shown any symptoms of insanity; and they testify with considerable particularity to his daily life, to his habits, to his conduct; and after being submitted to a rigid cross-examination, their testimony is unshaken.

In this review of the record we feel that whilst he is a weak-minded man, yet that he has shown sufficient capacity to manage providently the earnings of the past ten years, and that he has control of the powers of mind, however limited they may be, and is not of the class of persons who can be said to be incapable of managing his own estate by reason of insanity.

The assignments of error are overruled and the judgment is affirmed.