## SAMUEL C. MUSGROVE, TREASURER OF HOWARD COUNTY, *vs.* THE BALTIMORE AND OHIO RAILROAD COMPANY.

*Mortgages to Secure Bonds Issued by Corporations Not Taxable Under Act of 1896, Ch. 120—Repugnancy Between Two Acts Approved on the Same Day.*

The Acts of 1896, Ch. 120 and Ch. 140, imposing a tax upon the interest payable under mortgages, do not apply to mortgages executed by a railroad company to a trustee to secure bonds sold to investors. Such bonds are taxable under the Act of 1896, Ch. 143, to the holders thereof in the counties where they reside, and are withdrawn from the system of taxation provided by the Act of 1896, Ch. 120.

When two Acts of the General Assembly were approved by the Governor on the same day, the presumption is that they were approved by him in their numerical order; and in case of a conflict or repugnancy between them, the one last approved is the effective statute.

*Decided November 19th, 1909.*

Appeal from the Circuit Court for Howard County.

The cause was argued before BOYD, C. J., BRISCOE, PEARCE, SCHMUCKER, BURKE and THOMAS, JJ.

*John E. Dempster* and *Richard E. Preece,* for the appellant.

*James A. C. Bond* and *Francis Neal Parke,* for the appellee.

PEARCE, J., delivered the opinion of the Court.

This is an action of assumpsit brought by the appellant, Samuel C. Musgrove, Treasurer of Howard County, to recover from the appellee, the Baltimore and Ohio Railroad Company, the sum of $1,736,000. The *narr.* contains but one count, for money payable by the defendant to the plaintiff, but sets out at much length the circumstances under which it is claimed the plaintiff became entitled to this large amount. The bill of particulars filed in the case is as follows:

"The Baltimore and Ohio Railroad Company
to
Samuel C. Musgrove, Treasurer of Howard County.

|       | Mortgage.    | Rate.  | Income.      | Tax.  | Amount Due |
|-------|--------------|--------|--------------|-------|------------|
| 1904. | $75,000,000  | 3½%    | $2,625,000   | 8%    | $210,000   |
|       | $70,000,000  | 4%     | $2,800,000   | "     | 224,000    |
| 1905. | "            | "      | "            | "     | 210,000    |
| "     | "            | "      | "            | "     | 224,000    |
| 1906. | "            | "      | "            | "     | 210,000    |
| "     | "            | "      | "            | "     | 224,000    |
| 1907. | "            | "      | "            | "     | 210,000    |
| "     | "            | "      | "            | "     | 224,000    |

$1,736,000."

The averments of the *narr.* may be summarized as follows:

That the amount claimed is for taxes due on two mortgages recorded in Howard County, and executed by the defendant in pursuance of the Act of Assembly, Chapter 140 of 1896, paragraph 200.

That under the provisions of Chapter 120 of 1896, paragraph 146A, all mortgagees or assignees holding mortgages of record in the State of Maryland are required to pay annually a tax of eight per centum upon the gross amount of interest covenanted to be paid each year to the mortgagee or his assigns by the mortgagors, to be collected by the proper authorities as other taxes are.

That by Chapter 140 of 1896, paragraph 200, any railroad company was authorized in executing a mortgage on property located in this State to secure bonds issued by such company, to covenant in such mortgage to pay the taxes levied on such mortgage, or the bonds secured thereby, or on the interest payable thereon.

That the defendant is incorporated by Chapter 123 of 1826, as a resident corporation of this State, with its main office in this State, in which it owns and operates various track rights, terminals, and rolling stock, and is a large holder of stocks and bonds of other railroads outside of this State, but which stocks and bonds are held in this State by the defendant.

That the two mortgages mentioned in the bill of particulars, are, 1st, one from the defendant dated July 1st, 1898, to the Mercantile Trust Company of New York, Trustee, for $75,000,000, bearing interest at 3½ per cent. per annum, duly record in Howard County, and upon property located in this State, to secure the payment of bonds named in said mortgage, issued and outstanding prior to Sept. 1st, 1903, and still outstanding; 2nd, another mortgage of same date, from the defendant to the United States Trust Company of New York, and John A. Steward, Trustee, for $175,000,000 with interest at 4 per cent. per annum, also duly recorded in Howard County, and upon property located in this State, to secure payment of bonds mentioned in said mortgage, and issued to the amount of $70,000,000, outstanding prior to Sept. 1st, 1903, and still outstanding.

That in each of said mortgages, the defendant, as authorized by Chapter 140 of 1896, paragraph 200, covenanted with the mortgagee and its assigns to pay all taxes levied on said mortgages, or the bonds secured thereby or the income thereon, and by virtue of said covenants became liable for such tax.

That it was provided by Chapter 120 of 1896, paragraph 146A, that where such mortgage is recorded in two or more counties in this State, the tax so levied shall be due and pay-

able in that one of the two counties where the greater part of the mortgaged property is located.

That by Chapter 405 of 1904 certain counties of this State were exempted from the operation of Chapter 120 of 1896 providing for the taxation of mortgages, and that after the passage of the above Act of 1904, a greater part of the property covered by said two mortgages was located in Howard County than in any other county wherein the said tax on mortgages is in force and collectible.

That the passage of Chapter 794 of 1906, and Chapters 283 and 564 of 1908, did not affect the right of Howard County to collect the tax claimed.

That the defendant in pursuance of the several Acts mentioned in the *narr.,* was assessed upon the books of Howard County upon the gross amount of interest covenanted in said two mortgages to be paid, according to the amount of the outstanding bonds for the years ending, Sept. 1st, 1904, 1905, 1906 and 1907. That by Chapter 317 of 1896, the Treasurer of Howard County was constituted the collector of all State and county taxes for said county and authorized to receive all moneys due said county from any source.

That the County Commissioners of Howard County duly levied upon said assessment of income due to said two mortgagees or their assigns, the said tax of eight per cent. and placed said levy in the hands of the plaintiff, by means of all which the defendant became indebted, and still is indebted to the plaintiff for county taxes as aforesaid, and being so indebted afterwards undertook and promised to pay the plaintiff the same on demand.

That the plaintiff has duly demanded the taxes mentioned in the bill of particulars, but the defendant has refused and still refuses to pay the same, and the plaintiff claims $2,-000,000.

To this *narr.,* the defendant demurred, and its demurrer was sustained, and judgment being entered thereon in favor of defendant, the plaintiff has appealed.

Since the decisions in *Faust* v. *The Building Assn.,* 84

Md. 186, and *Allen* v. *Nat. State Bank,* 92 Md. 509, there
can be no question that mortgages of land in this State, owned
and held by citizens of other States, *as well as of this State,*
may rightfully be taxed in the counties of this State where
the land is situated, and that though the tax be levied upon
the interest, and not directly upon the mortgage debt, "this
is only another method of taxing the latter, and the rate of
taxation is determined by the percentage of interest." The
only question therefore which it will be either necessary or
useful to consider, is whether the Legislature has intended by
the passage of the various Acts relating to this subject, to ex-
ercise the power to impose the tax in question here; or, chang-
ing the form of expression, without altering its substance,
whether the Legislature intended to impose this tax upon
railroad mortgages given to trustees to secure bonds issued
by it and sold to investors as other marketable securities are
sold.

Section 146A of Chapter 120 of the Acts of 1896 is now
codified as sec. 183 of Art. 81. As originally enacted, it pro-
vided that: "All mortgagees or assignees holding mortgages
of record in this State shall annually pay a tax of eight per
centum upon the gross amount of interest covenanted to be
paid each year to said mortgagee or his assigns by
the mortgagor, to be collected by the proper authorities
as other taxes for county and State purposes in the sev-
eral counties, and municipal and State taxes in Baltimore
City, are collected; * * * provided that if any mortgage is
recorded in two or more counties, or in Baltimore City and in
any county or counties in the State, the tax hereby levied
shall each year be paid in the county or Baltimore City, where
the greater portion of the property covered by the mortgage
is located." This section contained provisions for the ap-
plication of said taxes which have been omitted here, because
immaterial in this case.

Sec. 146A, as codified in sec. 183 of Art. 81, provided that
the tax above mentioned should be paid by all mortgagees or
assignees holding mortgages of record in Worcester, Wicom-

ico, Somerset, Carroll, Howard, Montgomery, Frederick. Washington and Garrett Counties, but exempted from the payment of said tax, Baltimore City and all the remaining counties of the State, and provided that the tax collected in the several counties in which it was still collectible should be applied exclusively to county purposes.

Chapter 794 of 1906, added Dorchester County to the counties in which such tax should be levied and collected.

Chapter 283 of 1908, further exempted Washington County, and Chapter 564 of 1908, further exempted Garrett County, so that now, the only counties subject to the opera- tion of sec. 183 of Art. 81, relating to the tax on mortgages, are Worcester, Wicomico, Somerset, Carroll, Howard, Mont- gomery and Frederick, and as averred in the *narr.*, and ad- mitted by the demurrer, the greater part of the property cov- ered by the mortgages in this case is located in Howard County, than in other county wherein said tax is collectible.

Sec. 185 of Art. 81, declares all covenants contained in any mortgage executed after March 30th, 1896, and recorded in counties where said tax is collectible, for the payment *by the mortgagor* of any taxes levied on the mortgage debt, or the interest payable thereon, to be null and void; and section 186 of Art. 81, provides that "any person or corporation *lending* money on mortgage upon any property in any one or more of the counties enumerated in sec. 183, in addition to the oath as to the bona fides of the consideration, must also make oath that neither the mortgagor, nor any one for the mortgagor has been required to pay the tax levied upon the interest covenanted to be paid, in advance, nor will the mort- gagor, nor any person for him be required to pay the same. These sections were originally secs. 146c and 146d of Chapter 120 of 1896.

But further, Chapter 140 of 1896, now section 209 of Art. 81, provided as follows: "It shall be lawful for any railroad company, or other corporation in executing a mortgage on property located in this State for the purpose of securing the payment of bonds issued by such corporation, to covenant in

such mortgage to pay the taxes levied upon such mortgage, or the bonds secured thereby, or on the interest payable thereon; and in such cases the oath prescribed in section 186 shall not be required; provided, however, that nothing contained in this section, shall be held or construed, to waive, release, or otherwise interfere with the valuation and assessment for the purposes of taxation of any bonds secured by such mortgage in the hands of the holders thereof resident in this State respectively, as directed in the case of other bonds by this Article."

Chapters 120 and 140 of 1896, were both approved on the same day, March 30th, 1896. The above recited acts cover all the legislation of the State referred to in the argument and in the zealous and earnest brief of the appellant, and *if there was no other legislation upon the subject,* the language of sec. 209 of Art. 81, would give color to his contention, and if considered, as it was in his brief, apart from contemporaneous construction of that Act, and without the light thrown upon it by some of the subsequent decisions of this Court, might make it difficult to escape his conclusion.

But there is other, and most significant legislation upon this subject not alluded to in the appellant's brief, and which we therefore presume he did not feel affected his position.

Section 194 of Chapter 120 of 1896, was in these words: *"All bonds, certificates of indebtedness or evidences of debt, of whatsoever form, made or issued by any public or private corporation, incorporated by or under the laws of this State, or of any other State, territory, district or foreign country, or issued by any State (except the State of Maryland) territory, district or foreign country, not exempt from taxation by the laws of this State, and owned by residents of Maryland;* and all certificates of indebtedness issued by any individual or firm, shall be subject to valuation and assessment to the owner thereof in the county or city in which such owners may respectively reside, and they shall be assessed and valued according to the rate of interest therein stipulated to be paid;" and the section then proceeded to fix a sliding scale of as-

sessment varying from fifty per centum of face value to twenty-five per centum of face value according to the rate of interest payable.

By Chapter 143 of 1896, also approved March 30th, 1896, and now sec. 210 of Art. 81, it is provided: "All bonds, certificates of indebtedness or evidences of debt in whatsoever form made or issued by any public or private *corporation* incorporated by this State, or any other State, territory, district or foreign country, or issued by any State (except the State of Maryland), territory, district, or foreign country not exempt from taxation by the laws of this State, and owned by residents of Maryland, shall be subject to valuation and assessment to the owners thereof in the county or city in which they respectively reside; and they shall be assessed at their actual value in the market, and such upon which no interest shall be actually paid, shall not be valued at all; and upon such valuation the regular rate of taxation for State purposes shall be paid, and there shall also be paid on such valuation, thirty cents (*and no more*) on each $100 for county, city, and municipal taxes in such county or city of this State in which the owner may reside."

The difference between these enactments is radical and obvious.    Chapter 143 of 1896 withdraws absolutely all bonds, certificates of indebtedness, or evidences of debt, *issued by any corporation,* in whatever form made or issued, from the operation of the system of assessment and taxation provided for such instruments by Chapter 120 of 1896, and subjects them to another and different mode of assessment and taxation, but leaves certificates of indebtedness *issued by any individual or firm* still subject to the methods prescribed for both classes of instruments by Chapter 120 of 1896.    The title of Chap. 143 clearly indicates that it was designed to add to Art. 81 *additional sections* to those mentioned by number in the title of Chapter 120, and the number of Chap. 143 almost irresistibly suggests that it was passed later than Chapter 120; but we are not left to mere suggestion, or inference resulting from that suggestion.

It is true both these Acts were approved on the same day, March 30th, 1896, and there is nothing upon the statute book, or in the record, to show with absolute certainty which was the latest enactment. But in *Strauss* v. *Heiss,* 48 Md. 292, there were before the Court two Acts passed at the same session and approved on the same day, relating to the same subject-matter, and entirely inconsistent with and repugnant to each other, and the question was, which of those two Acts was to be considered as the controlling and operative law. In that case it is true also, that there was the testimony of Governor Whyte that he had signed and approved Chapter 325 subsequent to the hour of the day on which he signed and approved 203, and the Court held that Chapter 325 having been approved at a later hour in the day than Chapter 203, the former became the law and therefore operated to repeal the latter.

In *State* v. *Davis,* 70 Md. 237, Chapters 261 and 497 of 1886, were under consideration by the Court. Both these chapters repealed sec. 7 of Art. 60 of the Code relating to marriage licenses, and they were irreconcilably inconsistent in their provisions. It does not clearly appear from that case upon what dates espectively, these Acts were passed, but the Court says on page 239 : "These Acts though passed on different days, *as their respective numbers very clearly indicate,* were approved by the Governor on the same day, and the question is whether they are so irreconcilably inconsistent that they cannot stand together, and the first in date must yield to the latter Act of the Legislature. Careful comparison of the two Acts shows their provisions to be so inconsistent that they cannot be reconciled, and cannot both be the law. The latest expression of the legislative will is found in Chapter 497; and as Chapter 261 and it were both approved by the Governor the same day, *the presumption is that they were approved by him in numerical order,* and, therefore, Chapter 497, having been last approved, became the finally operative statute. That is the rule applied in *Strauss* v. *Heiss,* 48 Md. 292. In that case the Court said the presumption was that

the later Act was last approved, and repealed Chapter 203 and became the law, but they also had the testimony of the Governor that Chapter 325 was in fact approved last. Here we must depend upon the presumption entirely."

It may be observed that JUDGE ROBINSON who delivered the opinion in *Strauss* v. *Heiss,* concurred in the opinion in *Davis* v. *State.* The inconsistency between Chapters 120 and 143 of 1896 as relates to the bonds here in question is too palpable to be denied, and it follows from the cases cited that, *quoad* those bonds, the provisions of Chapter 120 are repealed by Chapter 143.

The significance attributed by the appellant to sec. 200 of Chapter 140 of 1896, in making it lawful for any railroad company or other corporation, in executing a mortgage on property located in this State, for the purpose of securing the payment of bonds issued by such corporation, to covenant in said mortgage, to pay the taxes levied on the interest payable on such bonds, while Chapter 120 of 1896 prohibited such covenant by an individual, wholly disappears when it is remembered that Chapter 143, the latest declaration of the legislative will, took all *corporate* bonds and certificates of indebtedness out of the general category of bonds and certificates of indebtedness provided for by Chapter 120, and out of the scheme of assessment and taxation therein provided, and substituted another and different rule of assessment based upon market value, and a fixed rate of taxation to cover all county, city and municipal taxation. Thereafter, it was no longer *lawful* to levy any tax upon interest, on such bonds, and the covenant in question could only be applicable to taxes *lawfully* levied. We have shown that these two systems of taxation, as relates to corporate bonds cannot stand together, and the latest declaration of the legislative purpose must prevail. It is clear in our opinion that the Legislature intended, in enacting Chapter 143 of 1896, to deal with *marketable* securities of corporations in a different manner from that in which they dealt with ordinary mortgages and with securities issued by individuals or firms, not regarded as marketable

securities sought for by investors generally; and that the Legislature intended by means of the discrimination in favor of such corporate bonds, to invite investment in the securities of great corporations not only by capitalists in our own State, but elsewhere. The decision of this case might be safely placed upon what we have said, without going further, but it will not be inappropriate to refer to some considerations which strongly sustain the view we have expressed.   The various Acts we have been considering were all enacted at the legislative session of 1896, thirteen years ago, in an endeavor to harmonize conflicting interests affected by the policy of taxation to be adopted, and one of the most important interests was that of the great corporations whose gigantic expenditures for equipment and betterments require them constantly to issue and place upon the market large blocks of securities.   To tax these securities unduly, would have been to destroy or curtail the market for them, to such an extent as to disable such corporations from making the improvements and putting into execution plans demanded for their full usefulness to the public, and thus to retard progress demanded in this age of competition for the prosperity of all the industries of the State. Since 1896, until the institution of this suit, no attempt has been made by any one charged with the execution of the revenue laws of the State, to collect the mortgage tax on bonds of a railroad or other corporation secured by a deed of trust to a trustee, and this contemporaneous construction during a period when the search for new subjects of taxation, and for additional revenue, has been anxiously prosecuted, carries with it great weight.   In *State* v. *Mayhew*, 2 Gill, 497, where the question was of the construction of the Constitution of the State, the Court said: "A cotemporaneouss construction of such duration, continually practised under, and through which innumerable rights of property have been acquired, ought not to be shaken, but upon the ground of manifest error and cogent necessity."

The consequences which would ensue if the contention of the appellant in this case were allowed would produce an

inequality which could not for a moment be defended, and which could not be believed to have been within the meaning and purpose of the Legislature. If a bond under the mortgage in question is held to be a mortgage debt and therefore subject to the tax on the interest on the bond, such bondholder would not only have to pay the State tax on the valuation of his bond and the tax of thirty cents on the hundred dollars of this valuation, for city, county and municipal purposes, but also the tax of eight per cent. on the interest on his bond, also for county purposes, while under an ordinary mortgage the mortgagee would pay only the eight per cent. on the interest on his mortgage debt. The holder of a *bond* under this mortgage would thus pay more than double the tax paid by the holder of a mortgage to secure the same amount secured by a bond under this mortgage.

The very full and careful brief of the appellees gives many illustrations of the inconsistencies and inequalities which would result from the appellant's construction, but it would serve no useful purpose to consider them here, though it would be interesting to do so. Nor do we think it necessary in view of what we have said, to determine whether the treasurer of Howard County was the proper person to sue, if the tax were held collectible, or, if the proper party, whether the *narr.* properly avers his qualification as treasurer and his authority to act. If the tax is not collectible by any one, it is immaterial to consider who would be the proper party to sue if it were collectible.

For the reasons stated the judgment will be affirmed.

*Judgment affirmed with costs to the appellees above and below.*