## Payment by Commonwealth for Care of Feeble-Minded

O'HARA, Deputy Attorney General, January 14, 1935.—We have your request to be advised whether the fiscal officers of the Commonwealth may lawfully approve for payment and pay the sum of $247,418.63 for the maintenance to March 1, 1934, of 647 indigent feeble-minded persons committed to the Philadelphia Institution for Feeble-Minded at Byberry. Philadelphia County seeks to offset this amount against the demand of the Department of Revenue for payment of moneys due to the Commonwealth.

This sum covers a charge for maintenance of inmates for various periods beginning subsequent to February 1925, when the institution was opened. The charge is $2 per week for each such inmate while housed within the institution. The inmates are all minors. All have been found to be feeble-minded and have been committed to the institution by the Municipal Court of Philadelphia in the exercise of its jurisdiction over juvenile dependent, delinquent, and incorrigible children.

The fund from which such payment may be made, if at all, is the appropriation made by Act 45-A, approved June 1, 1933. The authorization for payment at the rate of $2 per week must be found, if at all, in the Act of May 25, 1897, P. L. 83, as amended by the Act of May 13, 1909, P. L. 535, 50 PS §625. The amending act is not material for the purpose of this inquiry. It increased the amount to be paid by the Commonwealth for each indigent insane person from $1.50 per week to $2 per week.

Preliminary to answering your question, we must decide the following questions:

1. Does the term "insane person", as used in the Act of 1897, as amended, include feeble-minded persons?

2. Are the moneys appropriated by Act 45-A, approved June 1, 1933, available for payments authorized by the Act of 1897, as amended, (a) for feeble-minded persons, and (b) for maintenance charges for feeble-minded persons incurred prior to June 1, 1933?

From our examination of the statutes and the decisions of the courts of this State, we answer each of these questions in the negative. Therefore, the claim of Philadelphia County must be rejected.

Modern medical science distinguishes between insanity, imbecility, and mental defectives, sometimes distinguished further as morons, imbeciles, and idiots.

Century Dictionary (Revised ed.), states the following definitions:

"*Imbecile*—(1) Without physical strength; feeble; impotent; helpless. (2) Mentally feeble; fatuous; having the mental faculties undeveloped or greatly impaired. (3) Marked by mental feebleness or incapacity; indicating weakness of mind; inane; stupid."

"*Imbecility*— . . . weakness of either body or mind, but especially the latter. . . . weakness of mind, owing to defective development or to loss of faculty, as to incapacitate its subject for the ordinary duties of life, and for legal consent, choice or responsibility."

Century Dictionary (Revised ed.), defines "moron" as "an individual with arrested intellectual development, whose mentality corresponds to that of a normal child from 8 to 12 years of age."

The New Century Dictionary (1927 ed.), defines "moron" to mean: "A person of arrested intellectual development whose mentality corresponds to that of a normal child from 8 to 12 years of age."

Century Dictionary (Revised ed.), defines "insane" to mean: "(1) . . . unsound or deranged in mind; crazy. (2) . . . wild, 'insensate', senseless. . . . (4) . . . crazed, lunatic, demented, maniacal."

The words of the Act of 1897 must be construed in the sense in which they were understood at the time of its enactment: 59 C. J. 1022, sec. 607 et seq. Popular construction by the general public over a long period of time should be considered: United States v. Farrar, 38 F. (2d) 515, affirmed in 281 U. S. 624; Eden Musee American Co. v. Bingham, 58 Misc. Rep. 644, 108 N. Y. Supp. 200. Contemporaneous executive construction is also entitled to weight: Grant, Hutcheson Co. et al. v. Pennsylvania Securities Comm., 301 Pa. 147 (1930); Garr et al. v. Fuls et al., 286 Pa. 137 (1926); Commonwealth v. Mann, 168 Pa. 290 (1895); and interpretation by the executive department at the time the law was passed is strong evidence of intent: New York Life Ins. Co. v. Bowers, 34 F. (2d) 60, affirmed in 39 F. (2d) 556, and certiorari granted 281 U. S. 718; Scott v. Commissioner of Civil Service, 272 Mass. 237, 172 N. E. 218; Musgrove v. B. & O. R. Co., 111 Md. 629, 75 Atl. 245.

Legislative construction in one act of the meaning of certain words is entitled to consideration in construing the same words in another act but is not conclusive, as the words may have been used in different senses: 59 C. J. 1033, sec. 612; Phila. & Erie R. Co. v. Catawissa R. R. Co., 53 Pa. 20 (1866); Must Hatch Incubator Co., Inc., v. Patterson, 32 F. (2d) 714; Chapin v. City of Lowell, 194 Mass. 486, 80 N. E. 618 (1907).

In Phila. & Erie R. Co. v. Catawissa R. R. Co., supra, the court said (p. 60):

". . . words of a statute—if of common use—are to be taken in their natural, plain, obvious and ordinary signification. The legislative intent is to be sought for through this ordinary signification of common words; and if a contemporaneous construction of the same words by the legislature itself can be discovered, it is very high evidence of the sense in which the words are to be received; for contemporanea expositio est fortissima in lege."

In Must Hatch Incubator Co., Inc., v. Patterson, supra, the court said (p. 716):

"It is a rule of statutory construction that a legislative construction in one act of the meaning of a word is entitled to consideration in construing the same word in another act, and this rule is entitled to great weight where the two acts pertain to the same subject-matter. . . ."

When the Act of 1897 was enacted, the civil status and custody of lunatics

and habitual drunkards were regulated by the Act of June 13, 1836, P. L. 592, and the admission into and discharge from hospitals for the insane in the Commonwealth of insane persons was regulated by the Act of April 20, 1869, P. L. 78, as amended.

Section 67 of the Act of 1836 provided:

"The word 'lunatic' in this act, shall be construed to mean and include every person of unsound mind, whether he may have been such from his nativity, as idiots, or have become such from any cause whatever."

The Act of 1869 did not define the term "insane person". It is to be noted that the word "lunatic" was used by the legislature to include, within the application of the Act of 1836, both the insane person and the idiot.

In construing the word "lunatic" as used in the Act of 1836, the courts have held it does not include a person suffering from mere weakness of mind short of idiocy: Commonwealth v. Reeves, 140 Pa. 258 (1891); In re Albro, 22 Pa. C. C. 70 (1898); In re Smith, 22 Pa. C. C. 487 (1899), affirmed in 12 Pa. Superior Ct. 649 (1900); Hetrick's Case, 23 Pa. C. C. 522 (1899). These cases clearly distinguish the feeble-minded from the insane and the idiot, and the insane from the idiot and the feeble-minded.

The Act of June 19, 1901, P. L. 574, amending the Act of June 25, 1895, P. L. 300, was enacted for the protection of the weak in mind: Hoffman's Estate, 209 Pa. 357 (1904). This act was later repealed and supplied by the Act of May 28, 1907, P. L. 292, 50 PS §941.

The Act of 1895 applied to persons weak in mind. The Act of 1907 applies to insane persons, feeble-minded persons, and epileptics. These acts distinguish between the insane and the feeble-minded. They preceded the Act of 1909, amending the Act of 1897, the act now under consideration.

As early as 1853 the need for separate provision for the feeble-minded was recognized in this Commonwealth. The Act of April 7, 1853, P. L. 341, sec. 5, provided that the Commonwealth would contribute a substantial amount to Pennsylvania Training School for Idiots and Feeble-Minded Children to aid in the maintenance of its inmates. See again the Act of March 20, 1872, P. L. 27, extending its benefits to adults.

Pennhurst State School was established by the Act of May 15, 1903, P. L. 446, 50 PS §471, for the reception, detention, care, and training of feeble-minded persons of both sexes, of eastern Pennsylvania.

On April 21, 1897, the Commonwealth opened Polk State School for the reception of feeble-minded in western Pennsylvania. It was authorized by the Act of June 3, 1893, P. L. 289, 50 PS §491.

Laurelton State Village was created by the Act of July 25, 1913, P. L. 1319, 50 PS §451, for the care and custody of feeble-minded women of child-bearing age. It began operating in 1919. It was designed by statutory direction to "provide separate classification of the numerous groups embraced under the terms 'idiotic', 'imbecile', or 'feeble-minded.' "

This brief sketch of historical background of the care and custody of feeble-minded persons in this Commonwealth is not intended to be complete. It nevertheless discloses that prior to enactment of the Act of 1897, the legislature of this Commonwealth clearly distinguished between the insane person and the feeble-minded, the latter including the imbecile and the moron.

The Philadelphia Institution for Feeble-Minded at Byberry was opened for the reception of patients in or about February 1925. Since February 1925, appropriations have been made by the General Assembly to pay for the care,

treatment, removal, and maintenance of the indigent insane in county and poor district hospitals, as follows: Act No. 89-A, approved April 10, 1925; Act No. 300-A, approved May 6, 1925; Act No. 5-A, approved March 31, 1927; Act No. 86-A, approved May 4, 1927; Act No. 21-A, approved April 26, 1929; Act No. 34-A, approved April 26, 1929; Act No. 36-A, approved June 22, 1931; Act No. 45-A, approved June 1, 1933.

The Act of 1897 and Appropriation Act No. 45-A of 1933 are in pari materia. When they are read together, we find that the Commonwealth authorizes and undertakes to pay to the municipality maintaining a county or local hospital the sum of $2 per week for each indigent insane person therein who has been legally adjudged to be insane and committed to the institution, or who has been transferred to such institution from a State hospital for the insane.

Upon inquiry we are advised:

(a) That the Department of the Auditor General has not at any time approved a requisition for maintenance of feeble-minded persons to be paid from moneys appropriated for the maintenance of the insane under any of the acts enumerated above.

(b) That the moneys appropriated by these acts, except that appropriated by Act No. 45-A of 1933, have been expended for the purpose designated in the act or lapsed by statute. It follows that, if the amount now claimed by the Philadelphia Institution for Feeble-Minded is a lawful claim, it may be liquidated only by money appropriated by Act No. 45-A of 1933.

(c) That none of the inmates for whose maintenance Philadelphia County seeks compensation has been adjudged to be insane and transferred from a State hospital to Byberry. We eliminate this class from consideration.

(d) That each inmate for whom claim is made has been committed as a feeble-minded person to Byberry by the Municipal Court of Philadelphia County, in the exercise of its jurisdiction over juvenile dependents, delinquents, and incorrigible children.

(e) That reports prescribed by sections 1 and 2 of Appropriation Act No. 45-A of 1933 have not been made since June 1, 1933, by the directors, trustees, or manager of the Philadelphia Institution for Feeble-Minded or by the Commissioners of Philadelphia County to the Department of Welfare; that similar reports prescribed by the appropriation acts for the biennial periods beginning and succeeding June 1, 1925, have never been made to the Department of Welfare.

This review leads us to the conclusions:

1. That popular understanding of the word "insane" clearly distinguishes it from "feeble-minded", "imbecile", or "idiot".

2. That the Commonwealth, in the care, custody, and treatment of the insane, feeble-minded, imbecile, and idiot, has clearly distinguished by legislative enactments over a long period of years between the "insane" group on the one hand and the feeble-minded, imbecile, and idiotic group on the other hand.

3. That the administrative officers of both the Commonwealth and Philadelphia County construed the Act of 1897 as amended and the appropriation acts enacted since the creation of the Philadelphia Institution for Feeble-Minded as excluding feeble-minded persons from the application of these acts.

4. That the Philadelphia Institution for Feeble-Minded was not established and has not been maintained by Philadelphia County or any municipality, borough, or township, of this Commonwealth, for the maintenance, care and treatment of the insane.

5. That "feeble-minded", "imbecile", or "idiot", is not included within the

term "insane" as used in the Act of May 25, 1897, P. L. 83, as amended, or in Appropriation Act No. 45-A approved June 1, 1933.

6. That to construe the word "insane" as including feeble-minded persons and thus making the Philadelphia Institution for Feeble-Minded an institution for the insane would be contrary to the manifest intention of the legislature and would not be according to the common and approved usage of the language of the act, its long-accepted construction by the officers of the Commonwealth and county administering the act, contemporaneous legislative definition, or the rules of construction to which we have referred.

Therefore, we advise you that the fiscal officers of the Commonwealth may not lawfully approve for payment the claim of Philadelphia County for the sum of $247,418.63 by it expended for the maintenance of inmates committed as feeble-minded persons by the Municipal Court of Philadelphia County, Juvenile Division, to the Philadelphia Institution for Feeble-Minded at Byberry, either during the biennium beginning June 1, 1933, or in any previous biennium.

From C. P. Addams, Harrisburg, Pa.